GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. IDA MATZDORF.

No. 1849.    Decided October 28, 1908.

Carriers of Passengers—Safety of Premises—Duty to Mere Friends of Passengers.

The duty of a railway company to keep its stations, waiting rooms, etc., in proper condition for use by passengers, though including a like obligation for the safety of friends or attendants going there to assist one arriving or departing and of those discharging the courtesies due from a traveler's relatives or hosts, does not extend to friends or acquaintances who enter the premises merely for purposes of greeting or farewell to the passenger. To such the carrier's duty is only that required to a licensee on its premises. (Pp. 44, 45.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

Ida Matzdorf sued the railway company and had judgment, which was affirmed on appeal by defendant, who thereupon obtained writ of error.

*Baker, Botts, Parker & Garwood, Newton & Ward,* and *Teagarden & Teagarden,* for plaintiff in error.—There must be some mutuality of interest in the purpose of the visit between the owner of the premises and the visitor, if the visitor be not invited there, to support a legal right to be there, and to raise the correlative duty of ordinary care to maintain safe premises; otherwise he is a mere licensee and assumes all risks arising out of want of ordinary care respecting the condition of the premises: Galveston Oil Co. v. Morton, 70 Texas, 400; Post v. Texas & P. Ry. (Texas Civ. App.), 23 S. W., 708; Burbank v. Railway, 42 La. Ann., 1158; Woolwine v. Railway, 36 W. Va., 329; Gillis v. Railway, 59 Pa. St., 129; Railway v. Bingham, 29 Ohio St., 364; Vanderbeck v. Hendry, 34 N. J. L., 467; Sweeney v. Railway, 10 Allen, 374; Railway v. Fairbairn, 48 Ark.,

491; 2 Jaggard on Torts, 889; 3 Elliott on Railroads, 1948, 1950; Patterson's Railway Accident Law, p. 176, sec. 184; Negligence of Imposed Duties to Passengers, Ray, pp. 25, 109, 110.

While the bare licensee assumes all risks arising out of want of ordinary care respecting the condition of the premises at the time he enters, the rule does not apply to subsequent negligence by which injury is directly inflicted upon him from other sources. Woolwine v. Railway, 36 W. Va., 329; Railway v. Bingham, 29 Ohio St., 364; Vanderbeck v. Hendry, 34 N. J. L., 467; Corrigan v. Union Sugar Ref. Co., 98 Mass., 577.

The petition was subject to general demurrer, for want of allegation of facts showing a legal right in plaintiff to visit the premises. O'Neil v. Railway, 59 N. W., 836, and all cases above cited.

An invitation to visit the premises is never inferred in favor of one who goes on a mission purely personal, and where there is no common mutual advantage shared with the owner; but, on the contrary, a mere license is inferred from such facts. Bennett v. Railway Co., 102 U. S., 585; Campbell on Negligence, sec. 33.

It needs only to be stated that all material issues must be supported by both pleadings and competent and sufficient testimony before they can form the basis of a judicial finding. Depot grounds are not public grounds or thoroughfares, but are like the premises of factories and other business undertakings, in regard to the rights of visitors thereon. No presumptions are indulged in favor of those who visit them not on business with the owner. O'Neil v. Railway, 59 N. W., 836; Post v. Texas & P. Ry. Co., 23 S. W., 708; St. Louis S. W. Ry. v. Shiflet, 98 Texas, 326; Heinlein v. Railway, 147 Mass., 136; Hecks v. Railway, 64 Mo., 430; Redegan v. Railway, 155 Mass., 44, and cases already cited.

*John Schorn,* for defendant in error.—The petition averred, and the undisputed evidence showed that Mrs. Simpson became a passenger on a train leaving appellant's depot on the occasion in question, and that appellee accompanied Mrs. Simpson to the depot for the purpose of bidding her good-bye. Appellee was, therefore, at the depot by the implied invitation of appellant, and appellant owed her the duty of ordinary care to keep the depot in a reasonably safe condition. Hamilton v. Railway Co., 64 Texas, 251; Railway v. Best, 66 Texas, 116; Gulf, C. & S. F. Ry. v. Williams, 21 Texas Civ. App., 469; Missouri, K. & T. Ry. v. Miller, 8 Texas Civ. App., 241; Railway v. Phillio, 98 Texas, 18; Izlar v. Railway, 35 S. E., 584; McKone v. Railway, 13 A. & E. Ry. Cases, 29; Keokuk Packet Co. v. Henry, 50 Ill., 264.

Mr. Justice Williams delivered the opinion of the court.

The judgment in this case was recovered against the plaintiff in error by defendant in error, plaintiff below, on account of a fall which she received in entering the waiting room for passengers kept by the railroad company at San Antonio. The fall was caused by a piece of wire projecting from a door-mat which penetrated plaintiff's shoe as she stepped upon it. Plaintiff was not a passenger and had

not gone to the station upon any business with the company or with any passenger. One Mrs. Simpson, intending to take passage, for a temporary absence, went to the station accompanied by her husband and children. Mrs. Nicholls and plaintiff went with them, plaintiff going upon the invitation of Mrs. Nicholls to accompany her, and to bid Mrs. Simpson good-bye.

Upon these facts the question is whether or not the plaintiff has a cause of action arising from a failure of the defendant to keep the waiting room and its approaches in safe condition, which is the only theory upon which the judgment is defended. If she is to be regarded as there upon an implied invitation from the defendant, the question should be answered affirmatively; if she was no more than a mere licensee, it should be resolved in the negative. (City of Greenville v. Pitts, 107 S. W., 50.)

Those who keep premises for the carrying on of business with the public impliedly invite people to come and transact business with them, and from this invitation arises the duty to keep the premises in suitable condition for use by those accepting it. Common carriers of passengers in this way extend invitations to persons desiring transportation as passengers and owe to them the resulting duty. The attendance and assistance of others is often necessary or convenient to passengers and the invitation to them includes the right to have others with them to assist them in attending to the details incident to departure or arrival. Hence such persons are entitled, in right of the passenger, to the use of the carrier's premises. The domestic relation and the ties of kinship and the usages incident thereto make it so customary as to be looked upon as a matter of course for persons sustaining such relations to attend the arrivals and departures of each other upon and from journeys. The existence of such relations, therefore, may often properly be regarded as sufficient to include within the invitation to the traveller those who so naturally are to be expected to attend his going or to await his coming. In the authorities stating the rule, the invitation is said to include those who go to "welcome the coming, speed the going guest." This suggests the existence of the relation of host, or entertainer, and guest, and is based upon social custom, which exacts the extension of certain courtesies and attentions by one to the other of those sustaining such a relation. Business relations may exist between passengers and others which will entitle both to be at the station and upon the premises of the carrier. We believe that these classes will be found to embrace all who have been held, by actual decisions, to be included by implication in that invitation which is extended by the carrier to the traveller himself. It is sometimes said generally that friends who go to stations to see passengers off or to await their arrival are in the invited class, but it will be found, in examining the facts of cases, that such expressions refer to those who sustain some special relation to the passenger, such as attendant, assistant, member of his family, host, or the like.

In the case of Montgomery & E. Ry. Co. v. Thompson (77 Ala. 457), the rule is stated thus: "All the property of a railroad company, including its depots and adjacent yards and grounds, is its

private property, on which no one is invited or can claim the right to enter save those who have business with the railroad. Under this classification, however, we must include attending friends and protectors, who accompany friends to the train to aid them in getting on, in procuring tickets, and in checking baggage, and kindred services. The same license is accorded to protecting friends, when the traveller is to leave the train. To persons filling these classes, the railroad corporation owe special obligations of duty, different from those due to the general public. While the former come by invitation, express or implied, the latter are mere pleasure seekers, or are prompted by curiosity. For the use and comfort of the former class, railway companies are bound to keep in safe condition all portions of their platforms and approaches thereto to which the public do or would naturally resort and all portions of their station grounds reasonably near to the platform, where passengers or those who have purchased tickets with a view to take passage on their cars would naturally or ordinarily be likely to go."

We are not disposed to draw narrowly the line defining those entitled to the benefit of the principle, but that line must be drawn somewhere, and we find no authority for the proposition that the invitation extends to those who have no business with the carrier or passenger and sustain no relation to the latter but that of friendship or acquaintanceship. If it includes one merely because he is a friend or acquaintance, it includes all friends and acquaintances, not of one passenger only, but of all. Not only that, but it is held that the invitation to those included in it is not simply to the station houses, waiting rooms, or platforms, but to the trains and any other places where the discharge of the duty of the attendant to the passenger makes it proper for the former to go. The consequences of such an extension of the doctrine may easily be seen. That which is really a mere incident of the relation of the carrier to the passenger would become the principal thing, and, instead of facilitating, would seriously impede the discharge of the duties of that relation.

In not a few of the cases in which the doctrine has been referred to, the real ground on which the carrier was sought to be held liable was that of active negligent conduct of its employes towards persons at stations or upon trains. It is scarcely necessary to say that we have before us no such case, or that our decision would not affect a right of recovery of that kind. Persons who go to such places upon occasion like that which took plaintiff to defendant's waiting room are not there unlawfully or wrongfully, and their right, as licensees, to complain of active negligence by which they are injured is unquestioned. The question here is whether or not the carrier owes them the affirmative duty of keeping its premises safe for their use as persons invited by it to go there, and we must hold that it does not owe that duty.

*Reversed and rendered*