## BAKER v. GOHMAN. (No. 6245.)

(Court of Civil Appeals of Texas. Austin. Nov. 10, 1920. Rehearing Denied Dec. 22, 1920.)

1. Carriers ⬤═282—Injured inquirer as to time of arrival of his train not trespasser.

If at the time plaintiff was injured by stumbling over a bundle of wire on defendant railroad's approach to its station, so that a train ran over his arm, he was going to the station to ascertain the time of arrival of a train he desired to take, and defendant railroad was negligent in permitting the wire to be where it was, he was not a trespasser or loiterer and could recover, though he had been at the station before to obtain the information, but left it to answer a call of nature.

2. Receivers ⬤═184—In absence of special denial defendant was receiver, plaintiff did not need to prove fact.

In an action against a receiver of a railroad company for personal injuries to plaintiff, in the absence of special plea denying that defendant was receiver, it was unnecessary for plaintiff to prove such fact.

Appeal from District Court, Milam County; John Watson, Judge.

Suit by C. B. Gohman against Jas. A. Baker, receiver of the International & Great Northern Railway Company. From judgment for plaintiff, defendant appeals. Affirmed.

Chambers & Wallace, of Cameron, Henderson & Ranson, of Bryan, and John M. King, of Houston, for appellant.

U. S. Hearrell, of Cameron, and J. W. Garner, of Rockdale, for appellee.

KEY, C. J. We copy from appellant's brief the statement of the nature and result of this suit, as follows:

"This is a suit brought by C. B. Gohman as plaintiff against Jas. A. Baker, receiver of the International & Great Northern Railway Company, he alleging as his cause of action: That on the 1st day of March, 1917, the defendant kept and maintained a certain depot and agents at the station of Rockdale for the purpose and convenience at all persons desiring to transact business relative to the carrying of freight and passengers on said line of railway. That the said depot is located north of the main line track, house track, siding, or switch. That the main line extends east and west and parallel to said depot and other buildings of the defendant, and within 30 feet of said passenger depot. That what is known as the house track or siding branches off from the main line east of the depot and extends along and next to the said buildings between said building and the main line. That south of said main line there are three sidings or switches that branch off from the main line east of said depot and extend by the lumber yard, cotton gin, and other concerns that face east. That west of said lumber office and lumber yards there are located the oil mill, ice plant, natatorium, and other concerns. That one of the main streets and thoroughfares crosses the railway tracks just east of the depot and in close proximity thereto, and said depot faces said street facing east. That there was a path or road leading from said concerns and the residence parts of the town situated south of the depot and railway tracks up to near the back end of said lumber yard

office and thence across said siding, switch, and main line and house track in a northeasterly direction to both the south and east entrance to said depot building, as well as leading east of said building out in said main street that runs north and south and just east of the depot.

"That on the 1st day of March, 1917, between the hours of 10 and 11 p. m., plaintiff went to the depot for the purpose of ascertaining the time a passenger train would arrive west bound for San Antonio, Tex., and with the purpose and intention of becoming a passenger on said train provided his trip pass, of which he was in possession, that entitled him to ride upon all passenger trains save and except trains Nos. 1 and 2, should any train pass west bound other than trains 1 and 2 he would remain at the depot and take passage on same if it should arrive within any reasonable length of time from the time of his arrival at the said depot. At said time defendant was running and operating several passenger trains, and he was desirous of finding out just when he could obtain passage on any west-bound train that his pass permitted him transportation in order that he might board said train for San Antonio to which place his trip pass entitled him to be transported as aforesaid.

"On his arrival he immediately sought the ticket and passenger agent to obtain the desired information as to the schedule of the west-bound passenger trains. No agent was present at the ticket office, or was there any one else connected with the railroad from whom he could obtain the desired information, and while there, and in a few moments after his arrival, he had a sudden call of nature, that demanded immediate relief of his bowels, and he went to the toilet of the defendant which was located near the ticket office, but found it was locked and securely fastened and he could not enter therein. He thereupon proceeded to cross over the railway tracks and sidings and into the lumber yard which was opposite the depot and south thereof, and after he had relieved the call of nature he proceeded to follow in said path, or by way that leads from the oil mill, gin, ice plant, and that runs just back of the office of the lumber concern as aforesaid and to cross over the tracks and siding as aforesaid and to the depot. While in said passageway frequently and much used as aforesaid, and on his way to the depot, there was passing a certain freight train of the defendant bound west on the main line track, and, when he had reached a point about 30 feet or more just opposite and south of the depot and a few feet from the south rail of the main line track, his feet became entangled in some wire that was allowed and permitted to be at said place, that by stepping on or into said wire he became so entangled in same that he was caused to fall in such a way and manner that caused his left hand and arm to fall across the south rail of the main line and while said train was moving thereby causing his left hand and wrist to be run over by said train and so injured and mangled that his entire left arm to his shoulder blade had to be amputated.

"Plaintiff avers: That at the place where the wire was when he became entangled in same and received his injuries thereby was situated at and near the place, where passengers got on and off of certain passenger trains, and in such a place that the public would naturally resort, and would be expected to be in getting off and on certain passenger trains and going to the depot from said trains, and from the depot to certain trains, and being in a place that was part of the premises as commonly used as a platform, and the approach thereto.

"That the said place where the wire was located being a part of the depot grounds as used by the public as aforesaid, the same was insufficiently lighted, there being no light whatever to warn or show to plaintiff the said wire and its location, for at the time he became entangled in same it was dark at said place and he could not see or discover the wire, and thereby have avoided the injury.

"That the place where said wire was located aforesaid was in a pathway or passage that had been habitually and constantly used by the public generally for many years prior to the time plaintiff was injured, and persons in the vicinity of the gin, ice plant, oil mill, and the inhabitants near by used said passageway with any and all kinds of business with the defendant in going to take passage on his trains or returning therefrom, as well as going to the main business portion of the city of Rockdale, and return to said vicinity, and that all of such facts, circumstances, and conditions were well known to the defendant, his agents and employés. That by such use by the public generally of said passageway was an implied invitation to so use said passageway and especially with persons that would have business dealing with the defendant and his agents that resided south of said depot.

"That the use of said passageway by the public generally as aforesaid, if not known to the defendant and his agents, should have been known by them in the exercise of ordinary care and diligence.

"Plaintiff says that the injuries received by him were caused and produced as the direct and proximate result of the negligence of the defendant, his agents, officers, and employés in this, to wit:

"(1) In failing and refusing to keep and maintain the place where the wire was located in a safe condition, such place being a part of the premises as commonly used as a part of the platform, and approach thereto, and at such a place as the public would naturally resort, and should be expected to be when departing or leaving trains as passengers, as well as for those who are at said place desiring to become passengers.

"(2) In failing and refusing to have said place where the wire was sufficiently lighted to have enabled plaintiff to pass by or over same with reasonable safety to himself.

"(3) In failing and refusing to keep said place where the wire was located in a reasonably safe condition, and for failing to use and exercise care to that effect, and to have removed said wire and not permitted it to remain in said place.

"Plaintiff further says: That at the time he was injured he was a healthy, strong, and robust young man of the age of 28 years, with a reasonable expectancy of 50 years to live, and was earning and capable of earning the sum of $3.75 per day, and would have been able and capable of earning such amount or more during the balance of his life to live but for such injury. That the only way of making a living and support for himself and those dependent

upon his labors is by manual and physical labor.

"That by reason of the injuries aforesaid he was compelled to go to a hospital and undergo a surgical operation in having his arm amputated and was confined in said hospital for several weeks, and from the injuries and operation he suffered great pain and anguish, and incurred great expense in the way of hospital fees, doctor bills, nurse hire, and for bandages and medicine in the reasonable sum of $500, and for all of which he has become liable therefor.

"That by reason of the loss of his hand and arm it is very difficult for him to find employment and work to do, and that he cannot receive the pay or wages of a man with two arms and hands, and that he cannot receive more than one-third the wages he could have received if he was possessed of two hands and arms.

"That for a period of eight months after he received said injuries he was unable to do any kind of work, and his earning capacity to make money for a living has been greatly decreased as aforesaid.

"That he has sustained damages for the reasonable value of the loss of time and incapacity to earn and make a living in the future, and decreased earning power, hospital and medical bills and for physical pain and mental anguish in the total and aggregate sum of $20,000, and for all of which the defendant is liable.

"Defendant answered by general demurrer, special exceptions, general denial, and for further answer, if so required to do, 'defendant would further show the court that plaintiff upon the occasion and at the time alleged in his petition was in the railroad yards of the defendant at 'or near the switch that runs through said yard where he had no business with the defendant, his officers, agents, and servants, but was loitering thereon about some business of his own, and that he being on said premises at the time between 9:30 and 10 at night, and loitering thereon without any care or caution for his own safety passing along near to a moving train when he should have been upon his guard against injury from same, and plaintiff was familiar with said yards, having lived in Rockdale all his life, if he·was injured at all, same was from his own want of care, which contributed proximately to his injury, and if he fell by being entangled his injury resulted from his failure to use ordinary care for his own safety, and same proximately caused the injury, and he is not entitled to recover herein.

"'Defendant would further show the court that the time of the injury, if he was injured, that plaintiff was near a switch over 100 feet from the passenger depot, and that he was not on or near the platform of said passenger depot, and that he was not at said place for any purpose or business connected with the defendant, and that he was loitering upon said track and was a trespasser thereon, and that the defendant owed him no duty, and that he was bound to take the premises as he found them and to exercise ordinary care for his safety, and if he was injured by stepping into a wire as he alleges, same was due to his own want of care and negligence on his part, he loitering on the premises of the defendant where he had no business in the nighttime near ·to and in close proximity to a moving train without using proper care and caution for his own safety, and if he fell as he alleges, same was due to his own want of care, and his own contributory negligence, and he is not entitled to recover in this cause.

"'Defendant would further show the court that the plaintiff being on the premises of the defendant with no business to transact at the place where he was injured assumed all risk in being there, and in loitering in the yards of the defendant in the nighttime on a call of nature, knowing same to be dangerous and in going in close proximity to the moving train along and near said switch track, and if he was injured by becoming entangled in a wire and by falling and throwing his hand into the train or by attempting to board said train while same was moving that he assumed all risks in so doing, and he is not entitled to recover in this cause.

"'Defendant would further show the court that the place where the plaintiff was injured was in the private yards of defendant, and that plaintiff had no business at said place, and that he took said premises as he found them, and that the defendant owed him no duty, and that the defendant had no knowledge of the existence of the wire, if there was a wire, and that if the plaintiff was injured as alleged by him that said injury was proximately caused by his own contributory negligence in being in said place of danger without any care or caution on his part, and had he exercised ordinary care for his own safety in walking about the switch tracks and yards in close proximity to a moving train he would not have been injured, and his failure to use ordinary care for his own safety proximately contributed to his own injury and he is not entitled to recover in this cause.'

"This cause was tried on the 27th and 28th days of October, 1919, same being submitted to the jury on special issues. They returned their finding into court on the 29th day of October, 1919, finding for the plaintiff on all issues submitted and assessing his damages at the sum of $12,225, and judgment was duly entered, based upon the finding of the jury. The defendant thereupon, in open court, excepted. Motion for a new trial was seasonably made, and same being overruled defendant gave notice of appeal to the Court of Civil Appeals for the Third Supreme Judicial District of Texas. Bond was duly filed and appeal perfected, and this case is now before the Court of Civil Appeals for review for the errors assigned in the trial thereof."

After defining "negligence," "contributory negligence," and "proximate cause," the trial court submitted the case to the jury upon special issues, which, with the jury's answers thereto, were as follows:

"Special Issue No. 1: Did the plaintiff, C. B. Gohman, acting in good faith, about 10 o'clock p. m. on March 1, 1917, go to the depot of defendant at Rockdale, Tex., for the purpose of inquiring of the local agent of defendant when a passenger train would arrive west bound, for San Antonio, Tex.? Answer: Yes.

"Special Issue No. 2: Did plaintiff, acting in good faith, on returning from the south of the depot approach the same for the purpose of ascertaining the time of arrival of a west-bound passenger train for San Antonio, with the intention of taking passage thereon if it

should arrive in a reasonable time, and was a train that his pass would permit him to be carried upon? Answer: Yes.

"Special Issue No. 3: While approaching the depot from the south, did plaintiff's feet become entangled in some wire that caused him to stumble and fall and his hand to be placed across a steel rail and to be run over by a moving train of defendant, and mashed to such an extent that amputation became necessary? Answer: Yes.

"Special Issue No. 4: Was the place when and where plaintiff's feet became entangled in the wire a part of the premises of defendant as was then commonly used as a platform or approach thereto? Answer: Yes.

"Special Issue No. 5: Was the place when and where the wire was located, when plaintiff's feet became entangled in same, such a place where passengers or those having tickets or passes with a view to take passage on trains would naturally or ordinarily be likely to go? Answer: Yes.

"Special Issue No. 6: If you answer either special issue No. 4 or 5, 'Yes,' then was such place unsafe for such persons by reason of the wire being there? Answer: Yes.

"Special Issue No. 7: If you answer either special issue No. 4 or 5, 'Yes,' then was it negligence on the part of the defendant to allow the wire to be in the place it was, when plaintiff became entangled in same? Answer: Yes.

"Special Issue No. 8: If you answer the foregoing special issue, 'Yes,' then was such negligence the proximate cause of the injury to plaintiff? Answer: Yes.

"Special Issue No. 9. Taking into consideration all the facts and circumstances, was plaintiff guilty of contributory negligence in approaching or walking along the side of the moving train and when his feet became entangled in said wire at such time? Answer: No.

"Special Issue No. 10: What sum of money, if paid now in cash, would reasonably compensate the plaintiff for the personal injuries sustained by him as a proximate result of said accident? Answer by stating the amount. Answer: $12,225."

### Opinion.

Many questions are presented in appellant's brief, none of which are new, novel, or difficult to decide, and therefore they will not all be discussed in this opinion. Many complaints are made against the court's charge and the refusal of numerous requested charges, all of which have been considered by this court and are overruled.

The plaintiff submitted testimony sufficient to show that the facts were substantially as alleged in his petition, upon the issues submitted to the jury. Under the assignments which charge that the court erred in overruling exceptions to the petition, and in not instructing a verdict for the defendant, his counsel urge with considerable reiteration in this court that the plaintiff was either a trespasser or a mere loiterer upon the defendant's premises, at the time he was injured, and therefore the defendant owed him no duty, other than to avoid intentional injury to him; and it is repeatedly contended that the plaintiff was not a passenger, and if not a mere loiterer, that he was merely engaged in his own business, and therefore the defendant owed him no duty.

The plaintiff did not base his suit upon the fact that he was a passenger, and that the defendant owed him the high degree of care which is due by a railroad to a passenger, but based his suit upon the ground that while, in good faith, he was approaching the defendant's depot to ascertain when a westbound train would be through, upon which he desired to take passage to San Antonio, he was caused to stumble and fall in such a way that a train which was passing ran over one of his arms and caused the loss of the same, and that his fall was caused by a bundle of wire, which the defendant had negligently permitted to be upon an approach to its station, which was commonly used by the public. The rules of law upon which the plaintiff based his case, and upon which we hold he was entitled to recover, may be found in the following decisions: Hamilton v. Ry. Co., 64 Tex. 251, 53 Am. Rep. 756; Ry. Co. v. Best, 66 Tex. 116, 18 S. W. 224; Ry. v. Matzdorf, 102 Tex. 42, 112 S. W. 1037, 20 L. R. A. (N. S.) 833, 132 Am. St. Rep. 849.

The facts in the Best Case were that he went to the depot of the Texas & Pacific Railway Company at Savoy to meet a friend on some business matters whom he expected to arrive on an incoming train, with the intention of taking passage on the train if his friend was on same; he did not see his friend, but thought he heard him call; the platform was so crowded he got off the platform onto the side of the track, and walking down some distance he attempted to go across the platform to the coaches, and was injured by a defective platform, by falling and placing his hands on the rail just as the train started, and the wheel ran over it, mangling his fingers so that amputation was necessary. On this state of facts the court said:

"The principle which imposes upon a railway company the duty of keeping in safe condition its premises for the use of a friend of a passenger, aiding him to enter or leave the train, now well established by adjudicated cases (Hamilton v. Ry. Co., 64 Tex., and cases cited), can have no definition not fairly embracing the plaintiff's case. The plaintiff was not a trespasser or an idle wanderer. He was there by appointment with one supposed to be on defendant's train, with a view of becoming himself a passenger, if the appointment was met. If his friend had been on the train, and the plaintiff had taken passage, he would then have entered the premises by right. It cannot be that the character of his entry is held in abeyance to be wrongful ab initio in one event, and, from the beginning, rightful in another. He was there to become a passenger in a stated contingency, ascertainable nowhere else. If he acted in good faith and not upon a mere pretense, he had the right to be upon the platform

and there receive the protection of ordinary care."

[1] The fact that the plaintiff had already been to the depot, and had retired therefrom for the purpose alleged in his petition and testified to by him, does not establish the fact that he was either a trespasser or a loiterer at the time he was injured. In fact, his testimony to the effect that he was compelled to leave the station in order to answer a call of nature is not unreasonable, and the jury had the right to accept it as a sufficient excuse for his second approach to the depot, and his being at the place where he was injured. When he first went to the depot, there was no agent or other employé there to give him the information he desired, and therefore he had the right to return for the purpose of obtaining that information. And if, at the time he was injured, he was approaching the depot for that purpose, and if he was at a place commonly used as an approach to the depot, and if the defendant was guilty of negligence in permitting the wire to be where the plaintiff got his feet entangled therein and was thereby caused to fall, then he was entitled to recover damages.

[2] There was no special plea denying that appellant was receiver of the railroad company, and therefore it was not necessary for the plaintiff to prove that fact. Schaff v. Nash, 193 S. W. 469. However, the plaintiff did make such proof by testimony which we hold was admissible.

Some other questions are presented in appellant's brief, all of which have been considered and are decided in favor of appellee. No reversible error has been shown, and the judgment is affirmed.