Enrique H. MENDEZ et ux., Appellants,

v.

The KNIGHTS OF COLUMBUS HALL,
Appellee.

No. 14687.

Court of Civil Appeals of Texas.

San Antonio.

July 31, 1968.

**30**

Bonilla, DePena, Read & Bonilla, L. Taylor Zimmerman, Corpus Christi, for appellants.

Lewright, Dyer & Redford, W. N. Woolsey, Corpus Christi, for appellee.

KLINGEMAN, Justice.

This is an appeal from a summary judgment granted defendant, The Knights of Columbus Hall, in a slip and fall case. Plaintiff Anita Mendez is the wife of Enrique H. Mendez, a member of the Ram Rodriguez Orchestra which had been employed to play for a New Year's Eve dance being sponsored by the defendant at the Knights of Columbus Hall near Falfurrias, Brooks County, Texas. Anita Mendez, while walking towards the bandstand from a table where she had been seated in said hall, slipped and fell and was injured as a result thereof.

Plaintiffs' sole point of error is that the pleadings, depositions and affidavits on file were sufficient to raise triable disputed issues of fact.

■ It is settled that in a summary judgment case the burden is upon movant to prove that there is no genuine issue of a material fact, and all doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W. 2d 929. Defendant asserts that the trial court did not err in granting its motion for summary judgment because, as a matter of law, there was no evidence of a probative value that plaintiff occupied the statute of an invitee; that she was injured while occupying the status of a licensee, and that the only duty defendant owed plaintiff was the duty not to injure her willfully, wantonly, or through gross negligence. Plaintiffs contend that Anita Mendez was an invitee on the premises and, in the alternative, that even if she was a mere licensee, that she was injured as a result of a dangerous condition existing on the premises, and there was a duty on the part of defendant to warn her or make the condition reasonably safe.

It is undisputed that on the occasion of the accident, defendant was sponsoring a New Year's Eve dance; that admittance to such dance was upon the basis of ticket purchases, and that Anita Mendez did not purchase a ticket. Plaintiffs contend, however, that it was a custom in the dance-band industry that wives of members of the orchestra are admitted free of charge to dances where their husbands are playing; that on the night of the accident defendant admitted Anita Mendez and some other wives of the orchestra members into the dance hall and supplied them with a table and chairs, and that there was a mutual benefit and advantage in having Anita Mendez and wives of other band members in attendance on the occasion. Oscar Hinojosa, a member of the Knights of Columbus, was the chairman in charge of procuring an orchestra for such dance. A written contract was entered into between

Ram Rodriguez and the Knights of Columbus, wherein Ram Rodriguez agreed to have his full orchestra (8 pieces) perform from 9 p. m. to 1 a. m. on the night of such dance, and the Knights of Columbus agreed to compensate said orchestra in an amount not to exceed $500.00.

Oscar Hinojosa testified that on December 31, 1966, members of the Ram Rodriguez orchestra arrived by bus and were admitted by him to the stage entrance of such hall; that thereafter he walked around the hall to the front entrance and while doing so encountered several ladies who said they were wives of the orchestra members and asked whether he had a reservation for them; that he told them he did not, that he did not know they were coming, and that the dance was completely sold out and there was no more room for anyone; that after some discussion the ladies were permitted to come in the hall and were seated at a table near the bar in the rear end of the hall. He testified that the only reason they were allowed to come in was that it was a cold night, and that he accommodated them to get them out of the cold.

Anita Mendez testified that it was customary for wives of orchestra members to be admitted into dances without charge, and while there was some discussion as to their being admitted, that they were admitted without objection. Enrique H. Mendez testified that they never paid to have their wives admitted to dances where they played, and by affidavit stated that in the event his wife and other wives of band members were not admitted he would not have remained and played on this occasion, and that based on his knowledge of the subject neither would other band members have remained. Mendez testified that he had played in Ram Rodriguez's orchestra only for a couple of weeks. Hinojosa testified that he was not aware of any such custom, that there was no such custom at this dance hall; that in the negotiations with Ram Rodriguez such custom was not mentioned, and that the contract did not provide that the wives be admitted free;

that no one ever told him that if the wives were not admitted the orchestra would not play.

The Knights of Columbus Hall is a split-level hall with four levels, the highest being located at the north end where the bar is located, and which level is carpeted; the dance area is on the lowest level, with the stage for the orchestra at the rear of this level; there are two intermediate levels and chairs and tables for patrons are located in the first three areas. Anita Mendez and three other wives were seated on the highest level, where the bar was located. She testified that when she entered the hall about 8:45 p. m. the hall was brightly lighted, but the lights were dimmed for the dancing and were dim at the time of the accident; that shortly after midnight, when the band played Auld Lang Syne some of the wives, including herself, started towards the stage where the orchestra had been playing, in order to greet their husbands, and that while so proceeding she slipped or fell in an area where a step down was located; that she had never been in such hall before; that she had not done any dancing that night and had not been on the floor before; that she was not aware of the step down, although the dance floor was obviously on a lower level.

The testimony is not clear as to just how Mrs. Mendez fell, she testified that she did not see any step down, that she was just walking along and all of a sudden she twisted her ankle or something and fell, that she missed the step or something. Hinojosa testified that he did not see the fall but it was in the area of one of the step downs; and Mrs. Mendez's husband testified that he did not see the fall but it was in the area of a step down. There is no testimony as to the exact nature of the step down where Anita Mendez presumably fell, nor is there any evidence of any concealed dangerous condition.

The principal question for our determination is whether at the time of the

accident Mrs. Mendez was an invitee on the premises or a mere licensee. If she was on the premises as an invitee it was defendant's duty to exercise ordinary care to keep the premises in a reasonably safe condition so that she would not be injured, but, on the other hand, if Mrs. Mendez was on the premises merely as a licensee the only duty the defendant owed her was not to injure her willfully, wantonly, or through gross negligence. Carlisle v. J. Weingarten, Inc., 137 Tex. 220, 152 S.W.2d 1073 (1941). It has been stated that the licensee takes the premises as he finds them and that the owner owes him no duty to maintain them in a reasonably safe condition. Galveston, H. & S. A. Ry. Co. v. Matzdorf, 102 Tex. 42, 112 S.W. 1036 (1908); Chekanski v. Texas & New Orleans Railroad Co., 306 S.W.2d 935 (Tex.Civ.App.— Houston 1957, writ ref'd n. r. e.); Meeks v. Cowart, 84 S.W.2d 845 (Tex.Civ.App.— San Antonio 1935, affirmed 131 Tex. 36, 111 S.W.2d 1105).

 In determining whether a person is an invitee or a licensee upon the premises of another the general test is whether the injured person at the time of the injury had present business relations with the owner of the premises which would render his presence of mutual aid to both, or whether his presence on the premises was for his own convenience, ,r on business with others than the owner of the premises. In the absence of some relation which inures to the mutual benefit of the two, or to that of the owner, no invitation can be implied and the injured person must be regarded as a mere licensee. Cowart v. Meeks, 131 Tex. 36, 111 S.W.2d 1105; Kruse v. Houston & T. C. R. Co., 253 S.W. 623 (Tex.Civ.App.— Galveston 1923, no writ). A licensee is a person whose entrance upon or use of the premises of another is permitted by the owner under such circumstances that he is not a trespasser but is without any express or implied invitation. He, therefore, occupies a position lying somewhere between that of a trespasser and that of one

who had been invited upon the premises by the owner or by one having authority to extend an invitation to enter upon same. He is on the premises by sufferance and not by virtue of any business or contractual relations with, or any enticement, allurement, or inducement to enter being held out to him by the owner or occupant, but merely in his own interest or for his own purposes, benefits, convenience or pleasure. Ft. Worth & D. C. Ry. Co. v. Mills, 140 S.W.2d 513 (Tex.Civ.App.— Amarillo 1940, writ dism'd judgmt. cor.).

 A permission, whether express or implied, is not an invitation to enter or use and establishes no higher relationship than that of a mere licensor and licensee. Branan v. Wimsatt, 54 App.D.C. 374, 298 F. 833. "The principle * * * appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it." Bennett v. Louisville & N. Ry. Co., 102 U.S. 577, 584–585, 26 L.Ed. 235. See also Olivier v. Snowden, 426 S.W.2d 545 (Tex.Sup.1968).

 It is our opinion that the evidence establishes as a matter of law that Anita Mendez was upon the premises of defendant for her own pleasure or benefit and not in connection with any business relations with defendant which would render her presence a mutual benefit to both; that Mrs. Mendez was a mere licensee upon the premises, and that under the record in this case defendant was not guilty of violating any duty owed to her.

The judgment of the trial court is affirmed.

CADENA, Justice (dissenting).

Without attempting to explore the niceties of the distinction made between an "invitee" and a "licensee," I would reverse the judgment of the court below. The pleadings, together with the summary judgment "evidence" as outlined in the ma-

jority opinion, clearly disclose the existence of a material fact issue as to whether or not plaintiff's injury was caused by a hidden defect, known to the occupier of the premises. Even that legal outcast, the "mere licensee," is entitled to be warned of the existence of such a condition. Gonzalez v. Broussard, 274 S.W.2d 737 (Tex. Civ.App.,—San Antonio, 1955, writ ref'd n. r. e.). The possessor of land "is under an obligation to disclose to the licensee any concealed dangerous condition of the premises" of which the possessor has knowledge. Prosser, Torts, § 60, p. 390 (3rd ed. 1964).