James Albert CLANTON, Appellant,

v.

L. E. BENSON, d/b/a Hot Rod Exchange, Appellee.

No. 17128.

Court of Civil Appeals of Texas.

Dallas.

Dec. 6, 1968.

Jay M. Vogelson, of Mullinax, Wells, Mauzy, Levy & Richards, Dallas, for appellant.

L. W. Anderson, of Anderson, Henley, Shields, Bradford & Pritchard, Dallas, for appellee.

DIXON, Chief Justice.

James Albert Clanton has appealed from a summary judgment that he take nothing in his damage suit against appellee L. E. Benson, doing business as Hot Rod Exchange, hereinafter called Exchange. Appellant alleges that on July 30, 1966, while on the premises of Exchange, he fell into a grease pit, sustaining personal injuries.

Appellant contends that he was a business invitee and that appellee was negligent (a) in failing to warn appellant of the existence of the pit; (b) in failing to provide and maintain a guard rail around said pit; (c) in failing to have the area of the pit adequately lighted; and (d) in permitting the open pit to be located near a vehicle (which appellee was offering for sale) under such circumstances as to obscure the existence and danger of said open pit.

Exchange contends that appellant Clanton was a licensee or trespasser, not a business invitee; and that Exchange was under no obligation to keep its premises in a safe condition for licensees or trespassers.

In three points of error appellant asserts in substance that the court erred in holding that appellant was a licensee and that there is no evidence to support such holding.

## FACTS

Exchange is engaged in the business of building, selling and servicing "hot rods". These vehicles are automobiles in which the engine is "souped up" and the transmission is usually changed. They are intended for racing at "drag race" tracks.

Larry Clayton Pierce, age 23, stepson of appellant Clanton, had been employed by Exchange since January 29, 1966 as a speed mechanic. Occasionally he helped other employees in the sale of automobile parts. He had never sold an automobile for Exchange. In regard to the sale of automobiles he testified by oral deposition that, "All I had to do was the power of finding a buyer, and then turning him over to them."

Pierce had been furnished a key to the premises, as he usually opened the place of business in the morning and sometimes worked late at night.

The Exchange place of business had closed at 6:00 o'clock P.M. on July 30, 1966. Pierce was driving one of his employer's automobiles on his way home. He lived with his mother and stepfather. The car he was driving caught fire. He succeeded in driving it to a service station where the fire was extinguished. Then Pierce phoned his stepfather for help.

Clanton, appellant herein and stepfather of Pierce, came to the service station. He then drove Pierce in his, Clanton's, automobile back to the premises of Exchange. This was to enable Pierce to pick up his own car which he had left parked on the premises. Pierce's car was then to be used in towing the damaged car back to the Exchange place of business.

Part of the premises occupied by Exchange is enclosed by a wire fence. The entrance is by a gate which is kept closed and locked with a chain. Prominently displayed on the gate is a sign reading "EMPLOYEES ONLY". About thirty-five feet inside the gate is a garage.

On arrival at the Exchange place of business Pierce unlocked the gate and he and appellant Clanton entered the restricted area. Pierce testified that he had to enter the garage to get some tools. Inside the garage was a "hot rod" which Pierce

himself was interested in purchasing. He was financially embarrassed at the time and told his stepfather he hoped the stepfather would finance the purchase for him. So both of them entered the garage to look at the car. A light was turned on near the front of the car. Pierce started walking to the left around the car. Clanton started walking to the right around the car. It was while doing so that Clanton fell into the grease pit. He was assisted out of the pit by Pierce. After sitting in his car for a while Clanton drove himself home.

We quote part of Pierce's testimony:

"Q Well, were you going to get your car, or were you going to get this car to push it back down?

A I was going to get my car.

Q Well, you opened the gate, then?

A Yes.

Q With your key, is that right?

A Yes.

Q And he went in with you?

A Yes, sir.

Q And I assume your car was parked on the lot or somewhere back there?

A Yes, it was.

Q Instead of going to get your car, you then told him that you were thinking about buying this car?

A I had to go into the garage to get some tools. There was a necessity to go into the garage.

Q All right, you had to go in the garage?

A Right.

Q But your father didn't have to go in there?

A Not other than to look at the car that I wanted to buy.

Q So, his only purpose in going in there was to look at this car which you wanted to buy, it that it?

A Right."

* * * * * *

"Q Had you discussed with Mr. Benson the fact that you desired to buy this car yourself?

A * * * No, I hadn't.

Q You had not?

A No, sir, I hadn't."

* * * * * *

"Q And was it before you got to the premises or after you got on them that you decided to show him this particular automobile you were thinking about buying?

A We were talking about it on the way down there, and I told him I had a car there that I would like to show him. And, when we got there, we proceeded in.

Q Now, then, was your father seeking to make an investment in that car, or merely to help you on it if it turned out to be a good buy?

A Just to help me on it."

We quote also from appellant Clanton's testimony:

"Q Now, the purpose, as I understand, the purpose of going in there was to look at this car your stepson was thinking about buying?

A Yes.

Q And he wanted you to look at it and get your advice?

A Yes, sir, he wanted to get my opinion on it."

Part of the record is an affidavit by Benson, sole proprietor of Exchange. We quote from the affidavit:

" * * * on the date of the alleged accident of the plaintiff James Albert Clanton, July 30, 1966, there existed a sign on a locked gate marked 'EMPLOYEES ONLY.' That a picture of

said sign located adjacent to the locked entrance on said gate is attached hereto and marked Exhibit '1'. That the lock and chain to open said gate is located toward the bottom of said picture and are the same lock and chain which the plaintiff's stepson Larry Clayton Pierce had to open to enter into said premises with his stepfather on the night in question. That said area is a restricted area for 'employees only,' and it would have been necessary for the plaintiff not only to go through this restricted area, but to also go approximately thirty (30) to thirty-five (35) feet to a garage and open the door of the garage where the accident occurred. That none of this area which is fenced off and so marked is for the public, and all business conducted with the public is conducted on other portions of the premises. * * * the said Larry Clayton Pierce had never discussed with me that he was interested in said car, nor having his stepfather finance it in any manner, nor was he authorized in any manner to open the gate and allow the public to go into this restricted area."

The above statements in Benson's affidavit are not controverted.

## OPINION

In our opinion the undisputed facts show that appellant Clanton occupied the status of a licensee, not a business invitee. Upon arrival at the Exchange premises Clanton and Pierce were diverted from their original purpose, which was to allow Pierce to get his own car to drive back to the service station so that he and his stepfather might tow the damaged car back to the Exchange place of business. It was not necessary for Clanton to go past the gate into the restricted area in order for Pierce to get his own car. Clanton was not a prospective purchaser of the car in the garage. He was interested only in the possibility of his financing his stepson's purchase of the vehicle. He should not have been in the private area restricted to employees. His stepson did not have authority to invite him into the area which was restricted against use by the public.

Under the circumstances appellee Exchange did not owe appellant the duty of ordinary care and was not obligated to keep the restricted private area safe for Clanton. Burton Construction & Shipbuilding Co. v. Broussard, 154 Tex. 50, 273 S.W.2d 598 (1955); Mendez et ux v. Knights of Columbus Hall, 431 S.W.2d 29 (Tex.Civ.App., San Antonio 1968, no writ); Bagby v. Barton, 131 F.2d 887 (5th Cir. 1942).

Appellant's points of error are overruled.

The judgment of the trial court is affirmed.