## GULF REFINING COMPANY v. HENRY H. BEANE.

No. 7290. Decided April 12, 1939.
Rehearing overruled May 10, 1939.
(127 S. W., 2d Series, 169.)

*King, Wood & Morrow* and *Newton Gresham,* all of Houston, for plaintiff in error.

Where the owner or occupant of premises knowingly suffers the public to cross such premises, a member of the public walking across the premises on a mission of his own, solely for his own convenience, and not on any business in which the owner or occupant is interested, and not in accordance with the intentions or design for which the premises being crossed were prepared or adapted, is not upon such premises under an invitation, express or implied, but is only a licensee to whom the owner or occupant of the property is under no obligation to keep the premises in a reasonable safe condition, while engaged in using said property for the legitimate purpose of removing therefrom the tanks and fixtures that had been formerly used in his business. Galveston-Houston Electric Ry Co. v. Reinle, 113 Texas 456, 258 S. W. 803; Galveston Oil Co. v. Morton, 70 Texas 400, 7 S. W. 756; Tex-La. Power Co. v. Webster, 127 Texas 126, 91 S. W. (2d) 302.

*Dick Young, B. C. Johnson* and *C. F. Stevens,* all of Houston, for defendant in error.

Defendant, being in possession of the property for the purpose of removing its tanks and fixtures and having left the hole unguarded, and having notice that persons had been using the well-defined pathway as a means of going to and from the store, was in no position to assert that it was free from liability upon the ground that plaintiff Beane was a trespasser. Allison v. Haney, 62 S. W. 933; 45 C. J. 802.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This suit was instituted in the District Court of Harris County by Henry Beane, who will be designated plaintiff, and by it he sought to recover damages for personal injury against

Gulf Refining Company, which will be referred to as defendant. The facts are practically undisputed and we make the following concise statement:

In December, 1932, and prior to that time, Alfred Collins was operating a store situated in the southwest corner of Lot 1, Block No. 1 of the Baseke Addition to the Town of Conroe. This was in the negro section of said town. The store fronted west upon a public street, and also had a side door on the south which opened into a public street. Situated upon Lot 1 of Block No. 1, some thirty feet east of the store operated by Collins, was a small filling station. This filling station faced south. It was upon property owned by Ed Winston. Sometime in the year 1928 Alfred Collins began operating this filling station for himself. There is nothing to show when the station was built. We infer that it was first used by Collins when he began operating same in 1928. On December 9, 1930, Collins executed with the Gulf Refining Company an agency agreement, by the terms of which the Gulf Refining Company gave Collins the privilege of selling its products at this station. This agreement had nothing to do with the leasehold in the premises. On December 16, 1931, Gulf Refining Company leased from Ed Winston the premises, being fifty feet east and west by twenty-five feet north and south. This lease did not include the ground where Collins operated his store. The same became effective December 19, 1931, and continued for one year. It was not renewed. Collins continued to operate the filling station under his agency agreement with the Gulf Refining Company until about December 14, 1932, when the station was closed and ceased to do business.

The filling station proper set back about nine feet from the street line. There were two pumps in front, which were constructed approximately at the edge of the property line, being about nine feet from the front wall of the filling station. A shed projected from the building out to the pumps and apparently practically covered same. The evidence indicates that there had never been any sidewalk along the south side of Block 1, or Lot No. 1 where the filling station was located. Vehicles requiring service stopped in the edge of the street near the pumps, or drove in from the street under the shed in the space between the pumps and the wall of the building. Apparently vehicles could go in and out at each end of the driveway which passed under the shed. There was a wash rack some eight or ten feet east of the building near its northeast corner.

The north portion of Block No. 1 was vacant. For some years, the approximate time not being shown, people had been walking across said Block 1 along a small path or trail from the street north of said block to the street south of same and then turning west to the store operated by Collins. It seems reasonably clear that this custom had prevailed prior to the time Collins began operating the filling station. This trail coming from the north passed between the filling station building and the wash rack. The proof showed that for some three years prior to the accident made the basis of this suit, persons walking along the path from the north and going to the store, when they reached the southeast corner of the filling station building, would depart from the path, turn to their right and pass under the shed on their way to the store. According to some witnesses, they would come the path to the corner of the building and then make a "short cut" to the store. The proof further showed, however, that if the driveway under the shed was being used for any purpose connected with the filling station the people traveling the path would go on to the street and pass around the pumps. According to Collins some persons did this regardless of the use of the driveway, while others would pass under the shed in going to the store.

The filling station was closed and ceased doing business some three or four days prior to December 17, 1932. On Saturday, December 17, the Gulf Refining Company's employees began the work of removing the under-ground tank. This tank was buried in the ground where the driveway passed under the shed and was a short distance from the east end of the shed. An excavation of considerable size and depth was made, but the tank was not removed that day. Being unable to complete the removal on Saturday afternoon the work was adjourned over until Monday. No barrier or light was left at the hole. About 8:30 o'clock p. m. plaintiff came walking along the path from the north with the intention of going to Collins' store to make a purchase. When he reached the east end of the shed he turned to his right along the former driveway and started to pass under the shed. In doing so he fell into the hole and was injured. The night was a dark one. The filling station was closed and had no lights. The lease of the Gulf Refining Company terminated by its terms on the 19th, but Collins had ceased to do business three or four days before, and the Company was preparing to move all of its equipment and open a station at some other part of the town.

The jury found that on December 17, 1932, the defendant

knew that persons traveling on foot along the trail between the filling station and the wash rack toward the store were accustomed to pass under the shed of the filling station. The jury further found that defendant failed to place lights at the hole under the shed for the purpose of warning persons who were accustomed to pass under the shed at night; that this failure was negligence, and such negligence was the proximate cause of the injury to plaintiff. Upon the theory that plaintiff was only a licensee, the trial court entered judgment in favor of defendant, notwithstanding the findings of the jury, citing numerous familiar cases which hold that as a licensee defendant did not owe plaintiff the duty of putting lights at the hole on its private property to guard against the accident. Upon authority of the case of Kallum v. Wheeler, 129 Texas 74, 101 S. W. (2d) 225, the Court of Civil Appeals reversed the judgment of the trial court and rendered judgment in favor of plaintiff. 105 S. W. (2d) 334.

■ The decision in the case of Kallum v. Wheeler, supra, is predicated squarely upon the proposition that the injured party in that instance was upon the premises of the defendant "by invitation or inducement, express or implied." In the present case we do not think plaintiff can be regarded as an invitee, as that term is usually defined. We think he was, at the most, only a licensee on the property of defendant at the time he was injured; and the general rule is that defendant did not owe him the duty of placing a light at the hole at the time in question. Galveston H. & S. A. Co. v. Matzdorf, 102 Texas 42, 112 S. W. 1036; Dobbins v. Missouri, K. & T. Ry. Co., 91 Texas 60, 41 S. W. 62; Street Realty Company v. Forrister, 22 S. W. (2d) 746; McGinty v. Texas P. & L. Co., 71 S. W. (2d) 354 (Writ ref.) ; Mendoza v. Texas & P. Ry. Co., 70 S. W. (2d) 261; Kruse v. Houston & T. C. Ry. Co., 253 S. W. 623.

■ Counsel for plaintiff apparently recognize this general rule, and seek to bring this case within an exception to same. There is such exception, and we think the circumstances in this case raised an issue of fact as to its application. This exception has been tersely stated by the annotator in the annotation following the case of Douglas v. Bergland, 216 Mich. 380, 185 N. W. 819, 20 A. L. R. 202. The rule as stated is as follows:

"The general rule is that where the owner or occupant of premises, with knowledge, and for a long period of time, permits the public to use the premises without objection, for the purpose of traveling across the same on a well-established and

safe path or highway, he cannot, without giving notice, render the premises unsafe to the injury of those who have used such highway, and have no notice of the changed condition, without being responsible for the resulting injury."

A great number of cases are cited in support of this rule. The case of Louisville & N. R. R. Co. v. Snow, 235 Ky. 211, 30 S. W. (2d) 885, applies this exception and refers to a number of cases. We do not fully approve the statement of the rule contained in that case, and think it is more accurately stated in the quotation above.

■ In the present instance persons had used the driveway in connection with the path for three years or longer. The jury has found that defendant had knowledge that persons were "accustomed" to using it in going to the store. Numerous circumstances may combine to determine whether or not a path or way has been used to such extent and in such manner as to induce a belief that a person traveling same will be safe from newly created dangers. A very significant circumstance is the relation the path bears to other public ways. In this case the situation of the driveway was such as to easily create a belief that it constituted the sidewalk in front of this property and in front of the intervening property between the station and the side door of the store. It occupied the space where the sidewalk would have naturally been. In addition, the fact that those who were accustomed to travel the path and cross the driveway were mostly persons on their way to the store, and the store remaining open for business as before the closing of the filling station, furnished a sufficient reason why defendant might have readily anticipated that one going to the store would turn at the corner in the usual way and fall into the unguarded excavation. As stated above, we think all the circumstances were sufficient to raise an issue of fact as to defendant's duty, and we are not prepared to say, as a matter of law, that the situation did not come under the exception above noted.

For the reasons stated herein, the judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court April 12, 1939.

Rehearing overruled May 10, 1939.