Victoria CHEKANSKI, Appellant,

v.

**TEXAS & NEW ORLEANS RAILROAD COMPANY, Appellee.**

No. 13143.

Court of Civil Appeals of Texas.

Houston.

Nov. 7, 1957.

Rehearing Denied Nov. 21, 1957.

Peter P. Cheswick, Houston, for appellant.

Baker, Botts, Andrews & Shepherd, George Jewell, Jr., and Finis E. Cowan, Jr., Houston, for appellee.

BELL, Chief Justice.

Appellant filed suit against appellee to recover damages for injuries sustained by her when she slipped and fell as she crossed the right of way of appellee on April 16, 1953. In her petition appellant alleged that for many years members of the public had used a pathway across the tracks of appellee where Hickory Street in the City of Houston deadends at the south line of appellee's right of way; that several days before April 16 servants and employees of appellee placed large clods of gravel, dirt and asphalt mixed together on and along the pathway; that the act of so depositing this material was negligence; that appellant slipped on a large asphalt clod lying on the pathway and sustained injury to her left foot, ankle, nerves, tendons, tissues and circulatory parts of her left foot and ankle.

The appellee, in addition to a general denial, pled appellant was guilty of negligence solely causing the injury in that she failed to keep a proper lookout for obstructions and debris; that she stepped into the pile of debris and rocks which were open, obvious and clearly visible without knowing its content; and she failed to take another pathway on seeing the rocks and debris in her path. Further, appellee answered that the rocks and debris were open and obvious to appellant and she assumed the risks incident to crossing appellee's right of way. Assumption of risk was further pleaded by the assertion that appellant had full notice of rocks and material being necessarily placed on the right of way from time to time and that with such notice appellant voluntarily assumed the risks incident to using the right of way as a crossing.

Trial of the case was commenced on November 13, 1956, and on November 15

the trial court, at the conclusion of all testimony, instructed the jury to return a verdict for appellee. Such a verdict was returned by the jury.

On November 19, 1956, before entry of judgment, appellant filed what she denominated a "Motion to Set Aside Verdict of Jury." The motion asked that the verdict be set aside and "no judgment be entered on such verdict." Then followed the reasons which in substance asserted that fact issues had been raised and the court should have allowed the jury to pass on the issues. In the prayer appellant asked that the verdict be set aside; that no judgment be entered; that the cause be restored to the trial docket and for such further relief as she might be entitled to in law.

Thereafter, on January 25, 1957, the court entered a judgment on the verdict in favor of appellee. No notice of appeal was contained in such judgment. The judgment makes no reference to appellant's "Motion to Set Aside Verdict of Jury" or any motion for new trial.

On January 29, 1957, appellant filed an appeal bond, reciting that notice of appeal had been given. It, in fact, had not been given.

Thereafter, on March 8, 1957, appellant filed a motion asking the court to rule on her motion for new trial filed November 19, 1956. On the same day the court entered its order reciting no formal order overruling such motion had been entered as he had treated such motion as having been overruled by implication by the entry of the judgment of January 25. The order of March 8 contained a notice of appeal.

■ Appellee has moved to dismiss the appeal because of the want of a timely notice of appeal. We conclude that no timely notice was given, but that under the facts above stated none was necessary. Appellee concedes, and we concur in such concession, that in one well defined instance

only will jurisdiction be conferred on this Court by filing of a bond without notice of appeal. This instance is where a motion for new trial is overruled, not by specific ruling of the court, but by operation of law. Houston Life Ins. Co. v. Dabbs, Tex.Com. App., 125 Tex. 100, 81 S.W.2d 42; Combined American Ins. Co. v. Morgan, Tex.Civ. App., 207 S.W.2d 701; McDonald "Texas Civil Practice", § 18.31, Vol. 4.

■ The motion filed by appellant was not called a motion for new trial, but its substantive allegations are essentially complaining of the action of the trial court in the trial of the cause. It also calls upon the court to review his action and to restore the cause to the trial docket. We hold, therefore, that the motion was a motion for new trial.

■ The motion was prematurely filed. However, such is not fatal to its effectiveness. Rule 306c, Texas Rules of Civil Procedure, provides that no motion for new trial shall be ineffective because prematurely filed. To the contrary, it will be deemed to have been filed on the day of, but subsequent to, the judgment assailed. Valley Transit Co. v. Lopez, Tex.Civ.App., 263 S.W.2d 830. Therefore, the motion was filed January 25, 1957. It should have been presented within 30 days thereafter, or, on or before February 24. It not having been presented, it was overruled by operation of law, on February 24.

■ The bond was already on file. It had been prematurely filed, but under Rule 306c, T.R.C.P., it is nevertheless effective and will be deemed to have been filed on the day of but subsequent to the overruling of the motion for new trial by operation of law.

■ The order signed by the court March 8, 1957, was without validity and has no bearing on this decision.

We overrule appellee's motion to dismiss the appeal.

We now turn to a consideration of the appeal on its merits.

■ The evidence established that for many years there had been no public crossing over the right of way of appellee, but that Hickory Street came to an end at the south line of the right of way and then started again at the north right of way line. Shortly to the east of what would be the east line of the street, if the street crossed appellee's right of way, where appellant received her injury, there was a pathway across appellee's right of way which had for many years been used by pedestrians. This use was known, or should have been known, to appellee. However, no evidence establishes any invitation or express consent to such use. The appellant had herself made use of this pathway for some time prior to April 16, 1953, the date of her injury. She used this way in going to and from her work. She was a seamstress at a garment manufacturing concern. On the day of her injury, she was on her way to her work. At the time of her injury she was on the right of way belonging to appellee. Appellee had no interest in the business of appellant and she had no interest in appellee's business. There was absolutely no business relationship between them. The presence of appellant on appellee's right of way was solely for her own convenience and such presence was not of mutual aid to herself and appellee. She was, therefore, a mere licensee and not an invitee. Cowart v. Meeks, 131 Tex. 36, 111 S.W.2d 1105; Mendoza v. Texas & P. Ry. Co., Tex.Civ.App., 70 S.W.2d 261; Kruse v. Houston & T. C. R. Co., Tex.Civ.App., 253 S.W. 623.

The evidence as to appellee's conduct, on which liability is predicated, showed that on April 15, the day before appellant's injury, between 3:00 and 3:30 o'clock in the afternoon, a Negro man in a red dump truck brought two loads of material and dumped it on the right of way near, and partially on, the pathway used by pedestrians. The witness who testified to this did not know who the man was or for whom he worked. There was no sign of any kind on the truck identifying to whom it belonged. When the first load was dumped, no one was present but the Negro driver and the witness who lived adjacent to the right of way. When the second load was dumped, some men, who the witness stated were members of appellee's section gang, were standing on the right of way watching the material being unloaded. The witness could not identify any of them but said she recognized the foreman whom she had seen working for the railroad for some time. He was a Spanish man. However, none of the members of the party made any effort to spread the material. In fact, they did nothing with respect to it. The material consisted of loose dirt and rocks of varying size. Some of the large clods looked like asphalt that had come off of a street. These rocks and clods were intermingled with some of the dirt. The material was placed on the side of the roadbed which is built up some six or seven feet. The slope down from the tracks was at an angle of from 30 to 35 degrees.

All of the above testimony was given by a Mrs. Braswell.

Appellant testified that on the afternoon of April 15 she went home early and the material was not there when she crossed the right of way. She stated there was just hard packed gravel on the pathway. She had used the pathway many times. She knew that in the past from time to time appellee had material placed on the right of way at the place where the pathway crossed. On the morning of April 16 she was crossing the right of way between 6:30 and 7:00 o'clock. She came from the north and when she got to the tracks she noticed the material that had been dumped there the afternoon before. She saw that there were two piles consisting of dirt intermingled with rocks. She looked over the

situation and saw there was a path between the two piles about two feet wide that had only loose dirt. She started down the inclined roadbed and her feet slipped. She was indecisive concerning what she slipped on. She did not, however, step on one of the large rocks and fall. There was no testimony of any hole into which she stepped. She merely stepped into the loose dirt and fell. She did not know how thick the dirt was. No one, so far as the evidence discloses, witnessed the fall. After the fall, other persons, who were unidentified except for Mrs. Braswell, came up to her, but remained only momentarily. In the fall she fractured her right ankle. There was nothing concealed under the loose dirt where she slipped.

This, apart from the testimony of two witnesses concerning use by pedestrians of the pathway, constituted all of appellant's evidence which bears on the question of liability.

Appellee established by Mr. Porch, its assistant roadmaster, that it had no red colored trucks but that its trucks were green. He also described the way the roadbed at the point of the accident was built. Further, the witness testified he knew of no dumping of material that was done by appellee at the relevant point in 1953 and he would, because of his duties, have known of it if any had been done. No one asked his permission. He testified no Spanish fellow was foreman of the section gang, but at that time Mr. O. C. Meyers was foreman.

Mr. Nealy, appellee's roadmaster, testified that on April 15 Section 56–A was the section on the railroad covering the relevant point. The record for the day showed that the gang charged with the responsibility of maintaining Section 56–A spent 16 hours patrolling the track, 28 hours servicing and unloading track materials, and 8 hours for switch oiling.

The above fairly well summarizes the testimony in the case.

■ Appellant, being a mere licensee, must accept the premises as she finds them. Appellee only owed her the duty not to wilfully, wantonly, with gross negligence, or by active negligence, injure her. Carlisle v. J. Weingarten, Inc., 137 Tex. 220, 152 S.W. 2d 1073; Galveston Oil Co. v. Morton, 70 Tex. 400, 7 S.W. 756; Dobbins v. Missouri, K. & T. Ry. Co., 91 Tex. 60, 41 S.W. 62.

■ Under the facts of this case, as stated above, there was no wanton or wilful act by appellee or its employees. Neither was there any gross negligence. The evidence wholly fails to establish any active or affirmative act of negligence on the part of any employee of appellee. No evidence identifies the Negro who dumped the materials as an employee of appellee. No evidence establishes the truck belonged to or was used by appellee. The very most it shows, if that much, is that the members of appellee's section gang saw the material dumped and were merely passive in their attitude toward the act.

■ We are further of the view that appellant failed to show any breach of duty by appellee which it owed her. The condition was open and obvious. At the very most, appellee would have been obligated to warn her that the dirt had been placed on the right of way the evening before. The evidence shows, however, that she saw the material, saw the two foot path between the two piles, saw the loose dirt on the pathway, and, nevertheless, attempted to use the pathway. When she used it, her feet slipped on the loose dirt. There was no evidence of anything concealed under the dirt. The clods were in part concealed under the dirt which was in piles. The clods had nothing to do with her falling. She saw no hole where she fell. She just stepped on the loose dirt and fell. The presence of loose dirt was open and obvious to her. Where there is an open and obvious condition which brings about the injury, there is no breach of duty. We do not

mean to say appellee here owed appellant, a mere licensee, any duty to warn, but even had she been an invitee, where there would be a duty by the property owner to warn of a condition, there is no breach of duty where the condition is open and obvious. McElhenny v. Thielepape, Tex., 285 S.W.2d 940; McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391; A. C. Burton, Inc., v. Stasny, Tex.Civ.App., 223 S.W.2d 310, error refused.

This case is distinguishable from that of Gulf Refining Company v. Beane, 133 Tex. 157, 127 S.W.2d 169. In that case the property owner changed the condition of the premises, gave no notice of such change and the injured party had no actual notice. Too, the condition causing the injury was a hole dug by the defendant which could not be seen at night, and the accident occurred at night. The condition there was in the nature of a concealed defect.

The judgment of the trial court is affirmed, WOODRUFF, J., not sitting.