**STANOLIND OIL & GAS COMPANY,**
Appellant,

v.

**Mrs. Amy Lou Bassham CANADA et al.,**
Appellees.

No. 17085.

United States Court of Appeals
Fifth Circuit.

June 26, 1958.

James Little, Big Spring, Tex., Little & Gilliland, Big Spring, Tex., for appellant.

Warren Burnett, Odessa, Tex., Mike Berry, Odessa, Tex., Associate, for appellees.

Before RIVES, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

In our disposition of this case the sole question is whether the evidence was sufficient to support the jury verdict allowing recovery for injuries sustained by Licensees when caused by the passive failure of the possessor of the land (road) to warn of a concealed dangerous condition.

Stanolind was the Lessee under a mineral lease covering eleven sections of land on the huge Spade ranch in the hilly, rough and mountainous country of West Texas. In the development of this lease, the drilling of wells, and the pumping and operation of them, Stanolind had built a network of roads.

For the segment involved in this occurence, the evidence shows that there was a main lease road from which various branches or forks ran. One of these was the branch which ran from the main lease road down to tank battery No. 6. This branch road ran generally northeast to southwest. About one-half mile or so down the branch road from its intersection with the main lease road, the branch crossed a ravine or draw. About three-quarters to one mile beyond the ravine, the branch dead-ended at tank battery No. 6. No road except this branch led to or from tank battery No. 6. When the branch road was built by Stanolind, three corrugated, metal culverts were placed in the draw to permit drainage and then covered to make a continuous surface grade since the tank battery side of the ravine was higher than the other.

A few days before February 6, 1955, the date of the accident, a heavy flash flood had completely washed out this crossing. In that condition it presented an obviously dangerous situation. A car approaching from the north driving toward the tank battery, if not stopped, would smash into the bluff, raised bank on the tank battery side. Although its dangers were obvious when seen, there was a further danger that, located just beyond the crest of a hill, it might not be seen in time to permit a southbound car to stop. The likelihood of this danger was recognized by the crude efforts of Stanolind's personnel who put a pile of brush on the south (tank battery) side and a mesquite log on the north side some sixty feet from the ravine as a warning. If a duty were owing, the jury could well have found this to have been an inadequate warning.

On February 6, five persons, including decedent and his plaintiff wife, were on this road about 10:00 o'clock at night. Decedent was driving his passenger car. Two of the survivors testified that while being driven not more than 35 miles per hour or so, the car came down the hill and, too late to stop, the driver saw the open crossing and smashed head-on into the south bank. Decedent was killed almost instantly. The mesquite log laid across the road 60 or so feet north of the crossing was neither recognized as a warning, or, if considered to be one, an adequate one.

Neither decedent, his wife, nor any of the other three had any business on Stanolind's road on the Spade ranch. There was strong evidence which the jury apparently rejected that the friendly family mild drinking get-together that afternoon had continued on as a deer hunting expedition even though the ranch was known to be posted, it was illegal to use search lights to hunt, to hunt after dark, and, indeed, in February at all. Other evidence indicated that they were simply joy riding, or some thought they were headed to a ranch of an uncle of one of the passengers, located a considerable number of miles from this scene. But there was testimony which the jury could credit that decedent, who had occasionally worked as an oil field roughneck, wanted to see the toolpusher on a drilling rig presumably on the Spade ranch lease, about getting a job. The decedent's wife knew nothing of this and the passenger who testified to it professed to have no knowledge as to where that drilling rig was located. There was a drilling rig in operation on the lease, but it was nearly a mile away and to the east of this crossing. It could not have been reached by following or using the tank battery No. 6 branch road.

As there was considerable testimony that oil companies, including Stanolind, who built and maintained lease roads in the West Texas ranch country, knew that people coming on such ranches indiscriminately used such roads where convenient with apparently no objection or resistance by oil companies, the Court held, and so instructed the jury, that these five were licensees as a matter of law. Both plaintiffs and defendant acquiesced in that, and the case was pitched below and here on that status.

■ As licensees, it was, and is here, recognized with candid forthrightness that duties owing by Stanolind were limited and restricted in nature. Texas has repeatedly declared in one way or another that " * * * the only duty that the defendant owed * * * was not to injure [the licensee] wilfully, wantonly, or through gross negligence." Carlisle v. J. Weingarten, Inc., 137 Tex. 220, 152 S.W.2d 1073, 1074. City of Greenville v. Pitts, 102 Tex. 1, 107 S.W. 50, 14 L.R.A.,N.S., 979. Judge, later Chief Justice Hickman, put it: "As to a person occupying that status, the law is well settled that he takes the premises as he finds them, and the owner owes him no duty to maintain same in a reasonably safe condition." Mendoza v. Texas & P. Ry. Co., Tex.Civ.App., 70 S.W.2d 261, 263 (no writ history). A failure to warn, a failure to maintain property in a safe condition, being a breach of no duty owed, creates no liability to a licen-

sec. Dobbins v. Missouri, K. & T Ry. Co., 91 Tex. 60, 41 S.W. 62, 38 L.R.A. 573; Galveston H. & S. A. R. Co. v. Matzdorf, 102 Tex. 42, 112 S.W. 1036, 20 L.R.A.,N.S., 833; Post v. Texas & P. Ry. Co., Tex.Civ.App., 23 S.W. 708 (no writ history); Texas Cities Gas Co. v. Dickens, 140 Tex. 433, 168 S.W.2d 208. An active wrong must be done. International & G. N. Ry. Co. v. Kent, 58 Tex.Civ.App. 272, 124 S.W. 179 (writ refused); Houston Belt & Terminal Ry. Co. v. O'Leary, Tex.Civ.App., 136 S.W. 601 (writ refused); Gulf Refining Co. v. Beane, Tex.Com.App., 133 Tex. 157, 127 S.W.2d 169 (opinion adopted).

To escape the rigors of this unyielding unanimity, great and decisive reliance is placed on Gonzalez v. Broussard, Tex. Civ.App., 274 S.W.2d 737 (writ refused, n. r. e), and the principle, cited with approval by that Court, set forth in Section 342 of the Restatement of Torts and which was paraphrased by the Trial Court's instructions to the jury:

"Dangerous Conditions Known
To Possessor

"A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

"(a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and

"(b) invites or permits them to enter or remain upon the land, without exercising reasonable care

"(i) to make the condition reasonably safe, or

"(ii) to warn them of the condition and risk involved therein."

▪ If Erie [Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188], does not compel us to do so, we may at least assume what Stanolind vigorously doubts that Gonzalez adopts the rule for Texas. Nevertheless, under it, as properly understood, we think the evidence was insufficient here. The crucial thing, so vividly reflected in every-one of the textual illustrations set forth in the Restatement (pages 932–938, see especially paragraph *f*, p. 936) is *actual* knowledge that a licensee, unfamiliar with the hidden danger, is either on or about to come upon that portion of the premises where that danger exists, or at least that it is *probable* that such a licensee, will become exposed to the unknown condition fraught with extraordinary peril.

Of course the facts here will not permit any such inference. Indulging every inference favorable to the verdict as we must, there was here no basis for a knowledge by Stanolind that strangers would, late at night, be using this dead-end branch road which led to nowhere so far as such users were concerned. One of the requirements, epitomized in the Restatement, is that the possessor "knows of *the condition* and realizes that *it* involves an unreasonable risk to *them* [licensees]." The possessor can hardly have this knowledge unless there is first shown a basis for his expectation that the part of the property containing the thing of danger will be used. In every case we think it will be found that the possessor knew that the specific portion of the property was then being, or soon would be, used by a licensee. Gulf Refining Co. v. Beane, Tex.Com.App., 133 Tex. 157, 127 S.W.2d 169; and see those cited in Gonzalez in support of that decision, Kentucky & West Virginia Power Co. v. Stacy, 291 Ky. 325, 164 S.W.2d 537, 170 A.L.R. 1; Baird v. Goldberg, 283 Ky. 558, 142 S.W.2d 120. See also Laube v. Stephenson, 137 Conn. 469, 78 A.2d 693, 25 A.L.R.2d 592, and Duff v. United States, 4 Cir., 171 F.2d 846.

If mere proof that it was the custom generally of people to travel over lease roads on West Texas ranches is sufficient to impose affirmative duties upon a possessor toward a licensee stranger who is, in the dark of night, using a lonely road that leads to nowhere except an isolated tank battery having no relevance or purpose to the temporary user, we

·832

would repudiate the Texas policy now so plainly declared:

"The rule that there is no duty to keep premises safe for trespassers or licensees is for the protection of the property owner. So long as he creates no nuisance, he is entitled to use his property as he sees fit. He is entitled to assume that his possession will not be disturbed by outsiders. It would be placing an unreasonable burden upon him to require that he keep his premises safe for strangers who come uninvited on his land for purposes of their own." Texas Cities Gas Co. v. Dickens, 140 Tex. 433, 168 S.W.2d 208, 210.

As the District Court ought to have granted the motion for instructed verdict and the subsequent motion for *j. n. o. v.*, F.R.C.P. 50(b), 28 U.S.C.A., the cause is remanded with directions for entry of a judgment of dismissal.

Reversed and remanded with directions.