Robert M. McGILL et ux., Appellants,

v.

MINYARD'S FOOD STORES, INC.,
Appellee.

No. 16918.

Court of ·Civil Appeals of Texas.

Dallas.

May 26, 1967.

Rehearing Denied June 23, 1967.

Charles D. Mayes and Ben Warder, Jr., of Carter, Gallagher, Jones & Magee, Dallas, for appellants.

Edward E. Crowell, Jr., Gardere, Porter & DeHay, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

Robert McGill, individually, and for his wife, Dorothy McGill, brought this action

against Minyard's Food Stores, Inc. seeking to recover damages for personal injuries which had allegedly been sustained by Dorothy McGill as a result of being struck by a grocery cart. It was alleged that Dorothy McGill was in one of the Minyard's Food Stores in Dallas as a business invitee when one of the employees failed to hold onto a grocery cart and pushed the same so that it struck and injured Mrs. McGill. The jury, in response to special issues submitted, found, inter alia, that (4) Roger Miller (an employee of Minyard's) pushed the grocery cart in question; (5) that Miller failed to hold onto the grocery cart while pushing same; (6) that the conduct of Miller in failing to hold onto the grocery cart was negligence and (7) such negligence was a proximate cause of the occurrence in question.

Asserting that there was no evidence of probative force to sustain the jury's answers to Special Issues 4, 5, 6 and 7, Minyard's Food Stores, Inc. filed its motion for judgment *non obstante veredicto*. The court sustained the motion and rendered judgment that plaintiffs take nothing by their suit.

Appellants' first five points of error attack the trial court's action in sustaining appellee's motion for judgment *non obstante veredicto*. They contend that there is evidence of probative force to sustain the jury's answers to the only liability issues found against appellee. Appellants correctly state the rule governing us in our judicial review of the trial court's action in setting aside the jury's answers to the disputed issues. To sustain the action of the trial court in granting the motion we must determine that there is no evidence on which the jury could have made the findings relied upon. Moreover, our review of the testimony must be such that all testimony be considered in the light most favorable to appellants and every reasonable intendment deducible from the evidence is to be indulged in their favor. Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194

(1952); Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547 (1962). We have, therefore, in obedience to these rules, carefully examined the entire record relating to the issues of liability which were disregarded by the trial court and having done so we agree with the lower court's action and affirm the judgment.

The material facts relating to the issues of liability are without dispute. The Minyard's Food Store involved in this case is located on Fitzhugh and Capitol Streets in the City of Dallas. In the front portion of the store are located four regular and one express check-out stands or stations where customers have their purchases checked and pay therefor. A customer entering the front door on Fitzhugh would be facing the check-out stands. The store uses grocery carts made of metal with a chrome type basket and swivel type rotating wheels which baskets weigh between 35 and 40 pounds. When not in use the grocery carts are placed in the front of the store for the convenience of customers. Ronald McDearmon was the manager of appellee's store and Owen McKinney was assistant manager. There were a number of other employees working in the store, including Roger Miller, who regularly worked at Check Stand No. 2, being employed as a part time checker and stocker in the store. He was not employed by appellee at the time of the trial.

Appellant Dorothy McGill testified that on September 1, 1964 she entered the store in question at about 6:00 or 6:30 P.M., to purchase two items of merchandise. It was necessary that she cash a check so that she could pay for same. As she entered the store she said there were very few people there and she began looking for the cage, just inside the door, to see if someone was there who could inform her about cashing a check. No one was in the cage so she turned to her right and walked towards a check-out stand where a man was checking groceries and another man was sacking the groceries. As she recalls, there was only one other customer

at this stand who was being checked out at the time. She talked to the man who was sacking the groceries and asked him about cashing a check and the man informed her that the manager was working at the register so she waited until he finished his task. She said that while she was standing near the check-out counter conversing with the man about cashing a check, she felt something strike her in the left hip. Upon feeling this jolt to her body she immediately took hold of the counter with her right hand and grabbed the basket with her left hand as she observed it was a grocery cart that had struck her. She testified she was so shocked and startled when the basket or cart hit her that she turned to grab hold and discovered that there was no one holding onto the basket. As she turned she did see one of the young employees of the store with an apron on standing near the front door where she had entered. She later learned that his name was Miller. At this juncture she testified:

"Q. What was he doing when you first saw him?

"A. He had his head down and he was either putting something on or taking something off, or taking care of something on his hands, I just saw him with both hands working at both hands, and his head slightly down like he was—I thought it was a band-aid, he was trying to take off his finger, some kind of a bandage.

"Q. In which direction would his body have been facing when you first saw him?

"A. He was facing me.

"Q. And did he ever look at you?

"A. I didn't see him right then look at me.

"Q. When did you next see that man?

"A. As he walked over and started to move the basket.

"Q. Did he come take hold of the basket?

"A. Yes."

Mrs. McGill testified that she had no conversation with the employee Miller at all and that she had never noticed him before this incident. She did not see Miller or anyone else handle the basket or push it prior to feeling it strike her. She did not know of her own knowledge what had happened to the basket or cart before it struck her.

Owen McKinney, the assistant manager, testified by deposition that he was present in the store on the occasion in question. He did not see the grocery cart come in contact with Mrs. McGill nor does he know anything about who pushed the cart, if it was pushed. At the time of the incident he was standing fairly close to Mrs. McGill and engaged in conversation with her concerning the procedure in cashing a check on an out of town bank. He was packaging groceries at the check stand and the store manager was running the cash register. He observed a pained look on Mrs. McGill's face and later saw Roger Miller come up and take the basket away. He was not paying too much attention because he was concentrating on sacking the groceries and it was his impression that the store had a good many people in it at the time. He testified that the store had issued specific instructions for employees to hold onto the buggies or carts at all times rather than push them free.

Ronald McDearmon, the store manager, testified that at the time of the incident he was operating the cash register at the check-out stand and was busy at that time. He said that he did not see the cart before it came in contact with Mrs. McGill nor does he know who had hold of it or whether it was pushed. He heard an exclamation from Mrs. McGill and she told him that she had been struck by a buggy. He observed that she was holding onto a grocery cart and he asked her if he could be of assist-

ance. He testified that Roger Miller came up about that time and put his hands on the buggy or cart and expressed regret that it did bump into Mrs. McGill and that he "was surprised that it did; I mean, it was purely accidental."

Roger Miller's deposition had been taken prior to the trial by appellants but such deposition testimony was not offered by either party. Neither did Roger Miller testify in person at the trial. No other employee or person in the store at the time of the incident testified.

The burden was cast upon appellants to establish by competent probative evidence a state of facts from which the jury might conclude and so find that appellee corporation, acting through its agents, servants or employees, was negligent on the occasion complained of and that such negligence was a proximate cause of Mrs. McGill's injuries. We have concluded, and so hold, that appellants have failed to carry this burden. It has long been the established law in this state that negligence is never presumed and that the mere happening of an accident is no evidence at all of negligence or proximate cause. Rankin v. Nash-Texas Co., 129 Tex. 396, 105 S.W.2d 195 (1937); Texas & Pacific Coal Co. v. Kowsikowsiki, 103 Tex. 173, 125 S.W. 3 (1910); Houston Nat. Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374 (1948); Wells v. Texas Pac. Coal & Oil Co., 140 Tex. 2, 164 S.W.2d 660 (1942, opinion adopted); Leatherwood Drilling Co. v. TXL Oil Corp., 379 S.W.2d 693 (Tex. Civ.App., Dallas 1964, writ ref'd n.r.e.).

The mere expression of regret by one of the store employees and a statement that "it was an accident" certainly forms no basis for justifying the jury to conclude that the incident flowed from some act of negligence on the part of one responsible to the appellee corporation. Appellants argue that it was possible or easily probable that Miller pushed the cart or failed to hold onto it before it struck Mrs. McGill. There is absolutely no evidence of probative force

that Miller ever had hold of the cart before it struck Mrs. McGill or that he did anything which caused it to strike her. Appellants' argument is based upon nothing more than speculation or surmise. Such argument must be predicated upon the assumption that Miller was in physical contact with the cart prior to the time it came in contact with Mrs. McGill. We find nothing in the record which would support such speculation or assumption. There is evidence that other people were in the store at the time and it might reasonably be argued that such other persons propelled the cart in such a manner as to cause it to strike Mrs. McGill.

Following the usual definition of negligence which was given to the jury by the court the jury had no evidence of probative force upon which to conclude that there was an absence of ordinary care by Miller at the time and on the occasion in question. Furthermore, under the definition of proximate cause as given by the court the jury could not possibly find evidence of probative force to justify its finding that any act or omission on the part of Miller brought about the alleged injuries to Mrs. McGill.

When we consider all of the testimony relating to the liability issues in the light most favorable to appellants the same does nothing more than raise a suspicion or surmise, and amounts to no more than a scintilla of evidence which has long been held to be insufficient to raise an issue of fact. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059 (1898). Finding, as we do, a total absense of evidence to create an issue of fact on the questioned matters, it necessarily follows that the action of the trial court in setting aside and disregarding the jury's answers to those issues, as it was required to do pursuant to Rule 301, Texas Rules of Civil Procedure, was entirely correct.

Our action in overruling appellants' first five points of error, and therefore affirming the trial court's judgment, renders it unnecessary that we pass upon or consider appellants' sixth, seventh and eighth points

in which they complain of the inadequacy of the jury's finding of damages to Mrs. McGill in the sum of $500, and also appellants' points 9 through 17, all dealing with procedural questions. However, we have carefully examined all of appellants' points and conclude that they are all without merit and they are overruled.

Finding no error reflected in this record the judgment of the trial court is affirmed.

Affirmed.