**Gladys McKETHAN, Appellant,**

v.

**Fred McKETHAN, Jr., et al., Appellees.**

**No. 673.**

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 17, 1972.

Rehearing Denied March 16, 1972.

Jack Kelso, Corpus Christi, for appellant.

Cullen, Edwards, Williams & Stevenson, Richard D. Cullen, Donald A. Edwards, Victoria, for appellees.

## OPINION

BISSETT, Justice.

This is a slip and fall case. Gladys McKethan, plaintiff-appellant, sued her son, Fred McKethan, Jr., and her grandson, Fred McKethan, III, defendants-appellees, for injuries sustained by her on June 27, 1970, when she slipped and fell in the garage of the home owned and occupied by her son, Fred McKethan, Jr., and his family.

Trial was to a jury. At the conclusion of all testimony, defendants' motion for instructed verdict was sustained and a take nothing judgment was entered. Plaintiff has duly and timely perfected her appeal to this Court. We affirm.

Appellant's sole point complains that the trial court "erred in granting an instructed verdict for the defendants because there was evidence in the record that the defendants were guilty of active negligence and that such negligence was a proximate cause of the injuries sustained by plaintiff".

As this is an instructed verdict case, in determining whether it was proper for the trial judge to take the case from the jury and render judgment himself, we are required to review the evidence in the light most favorable to the losing party, indulging against the judgment every inference that may properly be drawn, and dis-

regarding all conflicting evidence. Dunagan v. Bushey, 152 Tex. 630, 263 S.W.2d 148, 153 (1953); Hamilton v. Liles, 404 S. W.2d 342 (Tex.Civ.App.—Houston 1966, writ ref'd n. r.' e.); Heathington v. Heathington Lumber Company, 398 S.W.2d 822 (Tex.Civ.App.—Amarillo 1966, n. w. h.).

The facts are undisputed. Appellant lived in Corpus Christi, Texas. Appellee, Fred McKethan, Jr., and his family (including Fred McKethan, III, his sixteen year old son) lived in Victoria, Texas. Appellant arrived at her son's home on June 26, 1970 for a short visit. She was a frequent visitor in the home. She was familiar with the floor plan and layout of the house. The front door opened from the living room onto a small front porch that was connected to the driveway by a concrete walk. A double garage with a concrete floor was attached to the house. A common wall separated the garage from the dining room and living room. A door (called the back door) opened from the rear one-third of the garage into the dining room. The back door was used about as much as the front door in entering and leaving the house.

The garage area served many purposes. Generally speaking, the half of the garage farthest from the house was used to accommodate a ping pong table and to store certain items; the half nearest the house was usually kept open for the parking of an automobile and for the repair of automobiles. A washing machine was installed in the rear of the garage close to the door leading to the dining room. Lawnmowers, edgers and garden tools were placed along the common wall separating the garage from the living and dining area. Lawn furniture, storage chests, barbeque equipment, and other items were positioned in various places in the garage.

The repair of cars, the parking of cars, the storage of various articles, and the activity in the garage area resulted in the accumulation of oil, grease and dirt on the garage floor. Consequently, it was necessary to sweep the floor area rather frequently and to scrub it every few weeks. On Saturday, June 27, 1970, the day of the accident, at about 8 or 9 o'clock in the morning, Fred McKethan, Jr., told his son, Fred McKethan, III, to clean and wash the garage floor. After receiving the instructions from his father, Fred McKethan, III, proceeded with the cleaning operations, commencing such work at about 10 o'clock a. m. He first moved the objects that were then located in the garage to the backyard, swept the garage floor, and then washed it down with soap and water. After he had finished scrubbing the garage floor, he swept the water outside of the garage, using a broom.

Appellant, shortly before noon, made preparations to leave the house. She went to her car (that was then parked in the driveway), leaving by the front door. She then decided to reenter the house. She was walking through the garage towards the back door of the house when she fell and sustained serious injuries. At the time of the fall, Fred McKethan, III, had completed the washing of the garage and at that moment was engaged in moving articles back into the garage. The exact spot of the fall was pinpointed to be "at the right hand door (garage), in the front at the center.", at about three feet inside the garage.

At the time of the accident, the weather was hot and sunny. The temperature stood at about 100 degrees. Both garage doors opening onto the driveway and the back door of the garage were open. Fred McKethan, III, in answer to questions concerning the condition of the garage floor at the time of the accident, said: "It was still wet in spots. It was mostly dry and I wanted to get through so that I could leave and do something else. And it wasn't completely dry but it was pretty dry."

Appellant, on previous visits to her son's home, would often go in and out of the house through the garage. She was familiar with the surface of the garage floor.

On the day of the accident, she heard her son, (Fred) tell her grandson (Fred, III) to clean out the garage. She knew that the garage floor had oil and dirt on it and that her grandson was going to wash it with water. She was aware that her grandson did wash the garage floor with water and that he spent about two hours immediately preceding the accident in the cleaning operations. She testified that she had been in garages frequently enough to know that oil and grease gather underneath the cars that are parked therein and that a mixture of oil and water on a concrete surface will cause the surface to become slippery. She further testified that at the moment of the accident, the garage floor was empty of lawn furniture, tools, barbeque pits, lawnmowers and the other articles that were usually kept therein, that there were no obstructions in her pathway to the back door, that she did not see anything at all on the floor that caused her to slip, and that while it was darker in the interior of the garage than it was outside, she had no difficulty seeing in the garage. She did not know that she had fallen in a wet spot until after the fall. She did say that there were dark spots in places on the garage floor, that looked like they might have been wet. The spot where she fell looked like all the rest of the spots. When she was asked on cross-examination whether, as she walked into the garage, she was actually looking down at the floor, looking at the door where she was going, or looking in the direction she was moving, she answered: "I was looking at the floor". In answer to another question, she replied: "I wasn't looking for any water; I was just looking where I was walking."

■ It has long been settled that a proprietor owes an invitee the duty to exercise ordinary care to keep the premises in a reasonably safe condition so that the invitee will not be injured, and to inspect the premises to discover any dangerous conditions and take such steps as are necessary to prevent the invitee's injury. Ge-

nell, Inc. v. Flynn, 163 Tex. 632, 358 S.W. 2d 543 (1962); Kallum v. Wheeler, 129 Tex. 74, 101 S.W.2d 225 (Tex.Comm'n App.1937, opinion adopted); St. Clergy v. Northcutt, 448 S.W.2d 847 (Tex.Civ.App. —Beaumont 1969, n. w. h.). On the other hand, if the person injured was on the premises merely as a licensee, under the general rule prevailing in this State, the only duty that the proprietor owed him was not to injure him by willful, wanton or gross negligence. Carlisle v. J. Weingarten, Inc., 137 Tex. 220, 152 S.W.2d 1073 (1941); Chekanski v. Texas & New Orleans Railroad Co., 306 S.W.2d 935 (Tex. Civ.App.—Houston 1957, writ ref'd n. r. e.). But there are exceptions to the rule. First, when the licensor has knowledge of a dangerous condition and the licensee does not, a duty is owed on the part of the licensor to either warn the licensee or to make the condition reasonably safe. Gulf Refining Co. v. Beane, 133 Tex. 157, 127 S.W.2d 169 (Tex.Commn.App.1937, opinion adopted); Gonzalez v. Broussard, 274 S.W.2d 737 (Tex.Civ.App.—San Antonio 1954, writ ref'd n. r. e.). Second, a licensee has the right to require of the proprietor of premises that he so conduct himself as not to injure him (the licensee) through his (the licensor's) active negligence. Burton Construction & Shipbuilding Co. v. Broussard, 154 Tex. 50, 273 S.W.2d 598 (1954); Arambula v. J. M. Dellinger, Inc., 415 S.W.2d 456 (Tex.Civ.App.—San Antonio 1967, writ ref'd n. r. e.); Boggus Motor Co. v. Standridge, 138 S.W.2d 643 (Tex.Civ.App.—San Antonio 1940, writ dism'd, judg. corr.); St. Louis Southwestern Ry. Co. of Texas v. Balthrop, 167 S. W. 246 (Tex.Civ.App.—Dallas 1914); 40 Tex.Jur.2d, Negligence, § 68, pp. 553–555.

■ The undisputed evidence shows that appellant was a "social guest" in the home of her son under either an expressed or an implied invitation. This is conceded by appellant in her brief. A "social guest" is classified in law as a licensee. Weekes v. Kelley, 433 S.W.2d 769 (Tex.Civ.App.—

Eastland 1968, writ ref'd n. r. e.); Bass v. Cummings, 415 S.W.2d 438 (Tex.Civ.App. —Amarillo 1967, writ ref'd n. r. e.).

■ The washing of the floor of a private garage with soap and water is a necessary and customary practice and is not negligence per se. Rogers v. Collier, 223 S.W.2d 560 (Tex.Civ.App.—San Antonio 1949, writ ref'd); Parker Food Stores, Inc. v. Pierce, 374 S.W.2d 699 (Tex.Civ. App.—Ft. Worth 1964, writ ref'd n. r. e.). Therefore, a licensee who slips and falls on a freshly washed concrete floor in the garage of a homeowner and occupant cannot recover for injuries sustained unless there is proof that the washing operations were negligently performed; or that the washing of the floor created a dangerous condition that was known to the licensor and unknown to the licensee and the licensor failed to either warn the licensee of the dangerous condition so created or failed to use reasonable care to correct and remedy the conditions that had become dangerous, after actual or constructive notice of such conditions; or that the floor was inherently dangerous and this fact was unknown to the licensee. No such proof is presented by the record in this case.

■ Neither the pleadings nor the evidence raise any issue of willfulness, wantonness or gross negligence on the part of either of the appellees. No exception to the general rule "if the injured party was on the premises merely as a licensee, the only duty that the licensor owed such party was not to injure him (or her) willfully, wantonly or through gross negligence" was either plead or proved. The evidence completely fails to establish any negligence, active or passive, on the part of Fred Mc-Kethan, Jr., or of Fred McKethan, III, appellees. There is nothing in the record that raises a question of fact relative to any pitfall or trap. There is no evidence of any hidden danger created by any act or omission of the appellees. There is not the slightest suspicion or indication that the concrete floor of the garage was inherently dangerous. The evidence shows that it was reasonable to wash the garage floor with soap and water. After scrubbing operations were completed, the fluid then standing on the floor was swept out of the garage. It follows that a reasonable time must elapse before the floor becomes completely dry. The presence of appellant in the garage was solely for her own convenience and by her own choice. She knew that there was oil, grease and dirt on the garage floor prior to the commencement of cleaning operations, that the garage floor was to be washed down with water and that the resulting mixture of oil and water would cause the concrete surface to become slippery as long as it remained wet. Appellant was, at all times pertinent to this appeal, fully aware of the conditions existing in the garage. When she, of her own volition, decided to walk through the garage on her way from her car to the house, she, being a licensee and completely apprised of the immediate prior washing of the garage floor, accepted the condition of the garage floor as it then existed. Galveston Oil Co. v. Morton, 70 Tex. 400, 7 S.W. 756 (1888); Meeks v. Cowart, 84 S. W.2d 845 (Tex.Civ.App.—San Antonio 1935, affirmed in Cowart v. Meeks, 131 Tex. 36, 111 S.W.2d 1105 (1938); Buchholz v. Steitz, 463 S.W.2d 451 (Tex.Civ. App.—Dallas 1971, writ ref'd n. r. e.). Appellant's point cannot be sustained.

■ There is another reason why this case must be affirmed. The owner of premises is not an insurer and has no duty to protect an invitee or a licensee against dangers which are clearly perceptible and obvious. Harvey v. Seale, 362 S.W.2d 310, 312 (Tex.Sup.1962). Appellant has not shown that either of the appellees breached any duty that either of them owed her or that they failed to warn her of the existence of a newly created dangerous condition. Both the two front doors of the garage opening on the driveway as well as the back door leading to the backyard were

**362**

open; it was a bright, hot, sunny day; there were no obstructions in the garage area or in appellant's selected pathway; there was ample light in the garage. Appellant knew that the garage floor had just been washed. She knew that there were dark spots on the garage floor that looked like they might have been wet. She saw the condition of the floor and was looking at the floor when she walked into a wet area, slipped and fell. There is no evidence that this wet area was hidden or concealed by anything; its presence was clearly perceptible and obvious. Where there is an open and obvious condition that brings about the injury, there is no breach of duty on the part of the licensor if he does not warn the licensee of the existence of such condition. See Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, 381–383 (Tex.Sup.1963); Hall v. Medical Bldg. of Houston, 151 Tex. 425, 251 S.W.2d 497 (1952); Steele v. Slade, 353 S.W.2d 329 (Tex.Civ.App.—Waco 1962, writ ref'd). The fact that appellant knew that the washing with water of a concrete surface that had oil and grease on it would cause a slippery condition constituted sufficient knowledge that she might slip and fall if she attempted to walk thereon before it had completely dried. The perilous condition, if any, in this case was as obvious and as well known to appellant as it was to appellees. The most that can be said is that appellant either made a mistake in judgment of the situation or made an erroneous estimate of what was plainly before her.

While resolving every reasonable inference in the evidence in favor of appellant, we can only find proof of the occurrence of an accident that resulted in substantial and costly injuries to appellant. Such evidence, as here presented, is not proof of negligence on the part of appellees. Phillips v. Citizens' Nat. Bank, 15 S.W.2d 550 (Tex.Comm.App.—1929); McGill v. Minyard's Food Stores, Inc., 417 S.W.2d 309 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.); Lane v. Massachusetts Mut. Ins. Co., 202 S.W.2d 311, 314 (Tex. Civ.App.—Ft. Worth 1947, n. w. h.). Appellant's point of error is overruled.

The judgment of the trial court is affirmed.