No. 92-134

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

DORIS BARROWS,

     Plaintiff and Appellant,

-vs-

BRIAN BARROWS,

     Defendant and Respondent.

FILED

DEC 22 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas M. McKittrick, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          Joseph C. Engel, III, Attorney at Law, Great Falls,
Montana

     For Respondent:

          Jeffrey T. McAllister; Conklin, Nybo, LeVeque &
Murphy, Great Falls, Montana


                Submitted on Briefs:   November 12, 1992

                            Decided:   December 22, 1992

Filed:

                                   Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from an order in the Eighth Judicial District, Cascade County, granting a directed verdict in favor of respondent Brian Barrows (Brian). Appellant Doris Barrows (Doris) sued Brian, her son, for damages incurred when she slipped and fell on the floor of his home. At the close of Doris' evidence, Brian requested a ruling on his pretrial motion for summary judgment and moved for a directed verdict. After oral argument on the summary judgment issue, the court dismissed the jury and directed entry of final judgment in favor of Brian. We affirm.

Doris, a 62 year-old widow, resides in Shelby, Montana. On December 21, 1989, she went to Texas to visit Brian, who was then an assistant elementary school principal in Clyde, Texas. She testified that the purpose of her visit was to spend the holidays with Brian and his family. She had visited them earlier that year, spending three weeks there in June shortly after her husband died. For her Christmas visit, she expected to stay until January 24, 1990.

On January 15, 1990, Doris was alone in the house. Brian and his wife, a school teacher, were at work. They were attempting to sell their house themselves, and they had asked Doris to show it that day to two sets of prospective buyers. Doris showed the house to the first set of buyers in the morning. Then, having several hours to wait for the other buyers, she decided to scrub and wax the linoleum floor in the kitchen. Brian and his wife had not asked her to do this, but she felt it would improve the appearance

2

of the house for prospective buyers.

After washing the floor with soap and water, using a string mop, Doris searched for and found a bottle of floor wax and a wax applicator. She dried the floor by going over it with the wrung-out mop and then applied the wax in the manner prescribed by the manufacturer's instructions, squeezing a small puddle onto the floor and spreading it evenly with an applicator. She completed the task by waxing her way across the kitchen to an adjoining carpeted area where she waited half to three-quarters of an hour for the wax to dry. After touching the floor and finding that the wax seemed dry enough to walk on, she walked across the kitchen toward the area she had waxed first. Near the edge of the linoleum she slipped and fell, breaking her right hip.

Doris required extensive surgery, for which she was hospitalized two weeks. She spent the next several months recuperating at Brian's house before returning to Montana in May 1990. Only then did she have an opportunity to examine the pants she was wearing at the time of her accident. She found a stain on the right leg, which she believed to be floor wax.

In her complaint, filed in November 1990, Doris alleged that she had fallen on Brian's floor because it was "uneven" and wax had accumulated in low spots, and that Brian's negligence, in failing either to correct the unevenness of the floor or to warn her about it, was the cause of her injury. Brian's answer denied these allegations and stated that Doris' contributory negligence either barred or diminished any recovery she might obtain. In an earlier deposition he acknowledged that the floor was uneven but stated

3

that he had not believed it to be unsafe and that he had not foreseen any hazard due to wax puddling on the floor.

Brian moved for summary judgment four days before the scheduled trial date. In his brief supporting that motion he argued that because the injury and the alleged tortious conduct occurred in Texas, Texas law should apply. Accordingly, he relied on Texas case law for the proposition that because Doris was a licensee, not an invitee, in his home at the time of the accident, he owed her only a duty of reasonable care to correct or to warn her about a dangerous condition of which he had actual knowledge.

The District Court, applying Texas law, found that as a matter of law Brian did not have actual notice of a dangerous condition and therefore had neither an opportunity to warn Doris nor an opportunity to remedy the condition. Therefore, the court concluded, the evidence was insufficient to take the case to the jury.

A motion for a directed verdict is properly granted only in the absence of any evidence to warrant submission to the jury, and all inferences of fact must be considered in a light most favorable to the opposing party. Britton v. Farmers Insurance Group (1986), 221 Mont. 67, 88, 721 P.2d 303, 317. The issue on appeal is whether the court failed to consider, or failed to consider in a light most favorable to Doris, evidence that warranted submission of the case to the jury. Questions of fact that Doris contends should have been given to the jury include:

1. Whether Doris was a licensee or an invitee at the time she was injured.

4

2.     Whether the condition of Brian's floor was inherently dangerous or posed an unreasonable risk of harm to Doris.

I

Doris argues that she was an invitee, not a licensee, because her activity in showing the house conferred an economic benefit on Brian.   Since she was an invitee, she argues, Brian's duty under Texas law was to exercise reasonable care to eliminate a condition that posed an unreasonable risk of harm to her, of which he had either actual or constructive knowledge.

Brian argues that Doris was only a licensee, because the primary purpose of her visit was to spend time with him and his family during the Christmas holiday, and that incidental chores undertaken by a licensee do not convert her status to that of invitee.   We agree.

Under Texas law, an invitee is "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land. . . . Without this element of invitation, . . . the potentiality of benefit to the occupier is not enough to make the visitor an invitee."   Prestwood v. Taylor (Tex. Ct. App. 1987), 728 S.W.2d 455, 462.   A social guest, "who comes on the premises for his own purposes with the occupier's permission or consent, rather than as a business invitee whose presence serves the occupier's economic interests," is a licensee.   Buchholz v. Steitz (Tex. Ct. App. 1971), 463 S.W.2d 451, 453.

Doris claims that her floor-waxing activity at the time she was injured was "exclusively related to her real estate agency of

5

showing the house to prospective customers." She testified, however, that during this visit and her earlier visit to the same house she took it upon herself to help with cooking and general housekeeping, though she had never washed or waxed the kitchen floor.

The District Court properly found that the primary purpose of Doris' presence in Brian's house was social. She was not invited to help sell the house. Her continuing presence was a result of a planned month-long visit and was not conditioned on her showing the house to prospective buyers. Further, her floor-waxing activity reflected her customary willingness to help out, not a new status as Brian's agent or employee.

There is no evidence of business dealings between Doris and Brian, and no evidence that Doris' activities provided the direct pecuniary benefit to Brian that is required, under Texas law, to convert a social guest to a business invitee. Prestwood, 728 S.W.2d at 464. The District Court properly held that as a matter of law, Doris was a licensee.

Doris' status is important under Texas law because it determines the duty Brian owed her as landowner or possessor. Texas has adopted Restatement (Second) of Torts, § 342, which makes a possessor liable for physical harm to a licensee caused by a condition on the possessor's property only if the possessor has actual knowledge that the condition exists and that it is dangerous. State v. Tennison (Tex. 1974), 509 S.W.2d 560 (a duty to warn a licensee of a dangerous condition arises only when the licensor knows of the condition likely to cause harm; actual

6

knowledge rather than constructive knowledge is required).

If Brian knew that the floor presented an unreasonable risk of harm to Doris, he had a duty either to remedy the defect in the floor or to warn Doris that it was dangerous. Brian testified, however, that he was not aware that wax would pool on the floor, and that he did not know Doris was going to wax the floor. The District Court properly ruled that as a matter of law Brian did not have actual knowledge of a dangerous condition.

## II

Doris argues that it was error for the District Court to concentrate on the waxing of the floor when expert testimony showed that the floor was "inherently dangerous." She relies on McKethan v. McKethan (Tex. Ct. App. 1972), 477 S.W.2d 357, 361, in which the court held that a licensee who slips and falls on a freshly washed floor cannot recover unless there is proof that the washing of the floor created a dangerous condition or that the floor was inherently dangerous and this fact was unknown to the licensee. The court in McKethan implied that the plaintiff would have recovered if the floor had been shown to be inherently dangerous.

Doris contends that the unevenness of the floor created an inherently dangerous condition that was known to Brian but not to Doris, and that Brian had a duty to warn Doris or remedy the defect. She cites a letter from Brian to Doris' lawyer, admitted in evidence and dated July 31, 1990, in which Brian acknowledged that the kitchen floor is "defective in places, as a result of the unevenness of the underlying concrete slab," and stated that he should have corrected the defect.

7

Brian did not write this letter, however, and he testified that he had signed it without consulting an attorney and without knowing that it might make him legally responsible for Doris' injuries. He also testified that the sentence in the letter stating that Doris had slipped on wet wax in an uneven part of the floor represented assumptions he had made after the accident, not knowledge that he had had before the accident.

The expert testimony to which Doris referred was given by Dennis Parr, a civil and structural engineer. Dr. Parr testified that based on an investigator's measurements and photographs, the floor in Brian's kitchen sloped one-quarter inch in three feet and that "generally accepted standards" require no more than one-eighth inch deviation in ten feet. He also testified that a homeowner who knew that the floor was "out of level this much" should re-level it because it was not safe. Doris contends that this testimony created a genuine issue of material fact regarding the inherent dangerousness of the floor, making summary judgment improper.

While we agree that Dr. Parr's testimony does raise factual issues--e.g., whether the floor sloped in such a way as to create a pool of wet wax on the spot where Doris fell--it does not address the critical issue of Brian's knowledge. It was not the slope alone that caused the accident, but the combination of the slope and the wax. Brian had no knowledge of either the slope or the wax.

If Brian did not have actual knowledge that the floor sloped and that the slope created an unreasonable risk for a guest in his home, he owed no duty to Doris to warn her or repair the defect.

8

Thus, a factual issue concerning the condition of the floor is immaterial, and the District Court did not err in concluding that Brian owed no duty to warn or repair.

> It is an elementary principle of law that before a claim for relief can be made against a defendant for negligence, the existence of a duty by the defendant to the plaintiff must be shown, along with the breach of the duty and a resulting injury.

Rollins v. Blair (1989), 235 Mont. 343, 346, 767 P.2d 328, 330.

A motion for a directed verdict or for a judgment notwithstanding the verdict "rests on a finding that the case of the party against whom it is directed is unsupported in some necessary particular." Nicholson v. United Pacific Ins. Co. (1985), 219 Mont. 32, 37, 710 P.2d 1342, 1345. Here, a directed verdict was proper because Doris failed to make a prima facie case of negligence. The judgment of the District Court is affirmed.

Justice

We concur:

Chief Justice

Justices

9

December 22, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Gary L. Spaeth
Spaeth Law Firm
P.O. Box 1361
Red Lodge, MT 59068

Hon. Marc Racicot, Attorney General
Michael S. Wellenstein, Assistant
Justice Bldg.
Helena, MT 59620

Damon L. Gannett
Gannett & Ventrell
175 No. 27th St., No. 1306
Billings, MT 59103

A. W. "Tony" Kendall
Carbon County Attorney
P.O. Drawer U
Red Lodge, MT 59068

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy